**People of the State of Illinois, Plaintiff-Appellee, v.
Kenneth A. Stewart, Defendant-Appellant.**

Gen. No. 52,802.

First District, First Division.

June 30, 1969.

Gerald W. Getty, Public Defender of Cook County, of
Chicago (George L. Lincoln and James J. Doherty, Assist-
ant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook Coun-
ty, of Chicago (Elmer C. Kissane and Patrick T. Driscoll,
Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the
court.

In a bench trial defendant was found guilty of burglary
and sentenced to the penitentiary for a term of four to
eight years. On appeal he contends that he was not

proved guilty beyond a reasonable doubt, and he was erroneously identified because of "unconscious transference."

The complaining witness, DeJean R. Criswell, a guard in the Cook County House of Correction, testified he lived on the second floor of a 9-unit building located at 733 East 80th Street in Chicago. At approximately 4:45 p. m. on June 28, 1967, as he entered the vestibule of his building, he looked up the stairway and saw a man, carrying a little bag, leave the Criswell apartment and walk casually downstairs. Realizing that his wife was at work and the man had no business being in his apartment, Criswell ran upstairs and found that his apartment had been ransacked. He ran downstairs and outside to look for the man. A bystander, Ben Gatewood, told him that a man had run down the alley, so he proceeded in pursuit. He finally saw the man in a parking lot, where the man turned to face Criswell from a distance of about fifteen feet. The man pointed a gun at Criswell and warned him if he did not break off the pursuit he would be shot. Criswell recognized the gun as the type he had in his home. When he returned home he found that his gun and a transistor radio were missing.

Ben Gatewood testified that he was a neighbor of Criswell and saw a man running out of the courtway of the building in which Criswell lived. The running man almost ran into Gatewood as he turned down the alley. Gatewood saw Criswell chasing the man and he followed.

Immediately after the burglary, Criswell and Gatewood looked at police photographs, and both testified that they picked out two pictures, one of the defendant and one of Donald Mann.

About a month after the burglary, on July 25, 1967, Criswell saw the defendant in a poolroom. The defendant said, "Hi, fellow," as he passed Criswell. Criswell stopped the defendant and accused him of the burglary.

Defendant denied the burglary and suggested that a man called "Cat Man," who resembled the defendant and who had gray eyes, could have committed the burglary. Criswell told the defendant that he worked for the House of Correction, and that he knew Cat Man, and that Cat Man was in the penitentiary. Criswell hailed a passing police car and had defendant arrested.

Criswell drove Gatewood down to a preliminary hearing in court. Before they arrived in court Criswell told Gatewood that they had caught "the fellow" in a poolroom. Gatewood then identified the defendant at the preliminary hearing. At the trial both Gatewood and Criswell identified the defendant as the man they had seen on June 28, and both men noted that defendant had an unusual way of walking, described as a limp. Gatewood testified that he remembered the burglar because of the color of his eyes, which were grayish-green. He was not sure whether the burglar had a mustache.

The defendant, Kenneth Stewart, testified he did not remember exactly where he was on the date in question but he probably was at home. He denied being in Criswell's apartment and denied walking with a limp.

In support of defendant's sole contention that he was not proved guilty beyond a reasonable doubt, defendant points out that the two witnesses for the State identified defendant about a month after the occurrence, but immediately after the crime, while the incident was still fresh in their minds, they identified a photograph of a man named Donald Mann as the man they saw running June 28. Defendant also notes that a police report, in evidence by stipulation, indicates that both witnesses identified only one photograph, the photograph of Donald Mann, as the burglar, and not the defendant.

Defendant argues that accepting as true the testimony of Criswell that he "recognized" the defendant in the poolroom about a month after the crime, he was uncertain at the time he viewed police photographs wheth-

er the burglar was the defendant or Donald Mann. Defendant further argues that if Donald Mann instead of the defendant had walked into that poolroom, it is likely that Criswell would have "recognized" Donald Mann as the burglar instead of the defendant. Defendant further states, "Neither of the eyewitnesses had a favorable opportunity to observe the fleeing burglar. Criswell could not very well view the burglar's face while running after him. . . . [Gatewood] merely saw a man running out of an apartment building courtway. He had no reason to pay attention, because at that time he did not know that a crime had been committed."

Defendant's authorities include Patrick Wall, Eyewitness Identification in Criminal Cases, pp 101, 102:

> "One of the most serious and most frequently arising indications that a witness's trial identification may be erroneous is the fact that the witness had previously identified someone else as the perpetrator of the crime. . . . If the witness, having taken this position, later reverses himself and identifies another, how can one be sure that he is not as wrong on the second identification as he now must admit he was on the first? If more time passed, might he not also retract this second identification and accuse a third person?"

Also, People v. Cullotta, 32 Ill2d 502, 207 NE2d 444 (1965), where the court held the identification by two witnesses was insufficient to convict, where neither of the witnesses had favorable opportunities for observation.

Defendant also asserts that "before Gatewood identified the defendant in person, it is clear that he was influenced by Criswell. Criswell drove him to the preliminary hearing. Before arriving in court, Criswell told him that 'the fellow' had been caught. In effect, Gatewood was told that the criminal had been caught and

was waiting to be identified. He no doubt believed that the defendant was the burglar before he arrived at the hearing to identify him. Under these circumstances, Gatewood's identification was very much dependent on Criswell's, and it is hard to believe that Gatewood would have identified anybody if Criswell had not identified him first." In support of the premise "that the influence of suggestion is an important cause of mistake," defendant cites People v. Gardner, 35 Ill2d 564, 221 NE2d 232 (1966), and People v. Minor, 95 Ill App2d 447, 237 NE2d 749 (1968).

Defendant further contends that he was erroneously identified by Criswell because of "unconscious transference." Defendant states that the mistaken identification known as "unconscious transference" occurs when the witness has very briefly seen the person identified at a place other than the crime scene. The face evokes a spark of recognition, but instead of remembering where he has observed the face, the witness mistakenly "recognizes" the face as that of the criminal. This phenomenon is explained in Patrick Wall, Eyewitness Identification in Criminal Cases, pp 119–121:

> " 'Identifications are based on *familiar associations.* Something about the person identified strikes a familiar cord in the mind of the witness. Frequently, however, *the familiarity is based on a past experience totally unrelated to the crime. . . .'*

> "The special problem created by an unconscious transference lies in the fact that its existence is almost always unknown, even to the person in whom it occurs. Most of the other factors which may affect the accuracy of an identification are verifiable; . . .

> "Obviously, the previous contact between the witness and the person identified must have been of a very limited nature. If the contact was frequent or prolonged, no transference would occur, for the

witness would place the face in its proper, non-criminal context."

Defendant argues that the instant case "presents a perfect illustrative set of circumstances for 'unconscious transference.'" Defendant's face was familiar to Criswell, and "this look of familiarity could have resulted, not from the crime scene, but from a previous meeting in the House of Correction." In support, defendant notes that "Criswell had been a correctional officer at the House of Correction for ten years. Since the defendant had previously served time in the House of Correction, it is likely that Criswell had seen him at some time in the past. Yet Criswell testified at the trial that he had never seen the defendant before. It is likely that Criswell had seen the defendant in the House of Correction, and it was this association which gave the defendant's face a ring of familiarity. . . . When the defendant passed Criswell at the poolroom, the defendant said: 'Hi, fellow' as if he knew him from someplace. It is highly improbable that a criminal would make this greeting to the victim of his crime. It is more likely that the previous contact between the defendant and Criswell occurred in the House of Correction."

In sum, defendant argues that "all the circumstances point to the possibility that the defendant was the victim of a mistake. The witnesses obtained only split second glimpses of the burglar under circumstances of stress and shock. They first identified the photograph of Donald Mann as the criminal. The ultimate confusion of the defendant with the burglar resulted from a probable brief association in the House of Correction. The record leaves one bewildered as to whether Donald Mann, the defendant, or some third person, committed the crime."

The State argues that in this case there were two positive and credible eyewitnesses and both had a good opportunity to observe the defendant and whose testimony

showed the defendant to be guilty of the crime charged in the indictment against him. The State asserts that Criswell had much more than a fleeting glance at the intruder. "There were two confrontations at close range and, even though he was being threatened with a gun, Criswell was not too shaken to make careful observations. He noted the color and type of the defendant's clothing, and also that the man walked and ran in an unusual fashion."

The State also asserts that the identification of defendant by Gatewood was clear and positive. As defendant left the building he passed within a few feet of Gatewood, who also had the opportunity to view the defendant's clothing and to take notice of the peculiar way in which the man ran. He took particular notice of the color of defendant's eyes, which he described as grayish-green. The State argues that the failure of Gatewood to recall whether defendant had a mustache in no way renders the identification less credible. People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964).

As to the contention that Gatewood's identification of the defendant at a preliminary hearing resulted from the suggestion by Criswell on the way to the hearing that the police had caught "the fellow," the State contends there is nothing in the record to indicate that Gatewood's identification of the defendant was the result of any suggestion on Criswell's part. In support is cited People v. Marshall, 74 Ill App2d 472, 221 NE2d 128 (1966), where it is said (pp 476–477):

"The fact that the police informed him (the witness) that the man whose picture he had picked out would be in the lineup does not seriously impeach the credibility of his identification. . . . Of course, the very fact that he was asked to come to a showup might cause him to think, as it would anyone else, that the police had arrested a man who they

believed might be the robber. But such an indirect suggestion is unavoidable."

As to the photographs, the State argues that the identification of the defendant was strengthened by the fact that the two witnesses picked out a picture of the defendant, and "any doubt which could possibly be raised by the selection of more than one photograph is completely obviated by the positive identification made by both witnesses at the trial." The State notes that the defense had ample opportunity to cross-examine both of these witnesses, but their testimony remained unshaken.

We agree with the State that the so-called theory of "unconscious transference" has no application to the instant case. Defendant was identified by two witnesses who had ample opportunity to observe the defendant at close range and who were both positive and credible. In People v. Bailey, 90 Ill App2d 121, 123, 234 NE2d 332 (1967), Mr. Justice Schwartz said:

"We are aware that visual perception is subject to error as are all our senses. That is not to say however that courts can no longer trust evidence which might be tainted by human fallibility. To make such an exclusion would in effect render impotent the administration of criminal law."

The record shows that the court, before finding defendant guilty of the offense charged and in reviewing the evidence, disclosed some concern over the photographic identification and noted that the police report indicated one photograph was picked out, whereas both witnesses said they picked out two photographs. The remarks of the court concluded with the statement: "Well, the identification was made by both these parties, and it was certainly clear. The identification was made in person by the complaining witness, Mr. Criswell, who

observed the person he chased. It certainly was clear and he picked this man out. All right, there will be a finding of guilty, and judgment on the finding."

In a bench trial in a criminal case, a reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to defendant's guilt. (People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963).) From an analysis of the entire record, particularly the evidence relating to identification, it is our conclusion that the proof was sufficient to satisfactorily establish defendant's guilt beyond a reasonable doubt. Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.