(No. 36741.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALLACE MILLER, Plaintiff in Error.

*Opinion filed January 22, 1964.*

LEWIS FIERI, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys

General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Wallace Miller, was indicted for armed robbery in Cook County in April, 1957. He was tried by the court without a jury, was found guilty, and sentenced to the penitentiary for a term of not less than 5 nor more than 10 years. He prosecutes this writ of error to review his conviction.

The defendant contends that identification of the accused was not established beyond reasonable doubt; that the trial court erred in allowing a police officer who was present during the hearing of defendant's testimony to take the stand and give rebuttal testimony, despite an order excluding witnesses; and that the State's Attorney committed prejudicial error in making a misstatement of fact in his summation.

In order to properly evaluate the first of defendant's contentions, it will be necessary that we set forth a brief statement of the facts. On March 8, 1957, at about 10:50 P.M. the complaining witness, Madison Clark, together with his wife, Edrice, and a woman companion who did not testify at the trial, were accosted by a stranger who forced the victims against a wall of a building near Roosevelt Road and St. Louis Street in Chicago. At gun point he obtained $38 from Madison Clark and also took his top coat, sport coat, hat and shoes. After the stranger fled, Madison Clark called the police and gave them his description of the robber.

On March 31, 1957, Madison and Edrice Clark noticed the defendant in their church a few pews behind them and recognized him as the stranger who had robbed him on March 8. After the services Madison followed the defendant to a house which the defendant entered. He called the

police, but before they arrived the defendant left the house and started to walk north on St. Louis Street, whereupon Madison Clark lost sight of him. On the evening of April 12, 1957, Madison Clark was leaving a restaurant on Roosevelt Road when he again saw the defendant entering the same restaurant. Clark did not say a word to the defendant but went out on the street and hailed a passing police car. One of the officers entered the restaurant with Clark who pointed out the defendant. They went over to the defendant and Clark informed the officer that the shoes and overcoat that the defendant was wearing were articles of clothing taken from him in the robbery of March 8. The defendant was arrested and booked for armed robbery.

After the arrest the police went to the home of defendant's sister and, in a bedroom used by the defendant, found a grey sport coat and blue hat which were identified as part of the clothing taken during the robbery of March 8. The police then requested Edrice Clark to come to the police station, and on the night of April 12, 1957, she identified the defendant from a line-up of five men as the person who robbed her husband on March 8. Both Madison and Edrice Clark positively identified the defendant at the trial as the person who had robbed him.

The defendant denied committing the robbery and, when asked by the police where he got the clothing that was found on him and at his sister's home, the defendant claimed he bought the clothing from one Willie Foster. The police picked up Willie Foster and questioned him, but released him when he denied the sale.

The defendant testified that on March 8, 1957, he did not go to work. He stated that he went to a gym for a workout until 9:00 P.M. that night. From the gym he went to a bar to see a girl friend. None of the defendant's witnesses who testified could account for his activities at the time of the robbery. His statement that he was with a girl at a bar was not corroborated.

It is quite clear from a recitation of the above facts that both Madison and Edrice Clark had positively identified the defendant on a number of occasions as the person who had committed the robbery on March 8, 1957. They both recognized him on March 31, 1957, while in church. Madison Clark recognized him again on April 12, 1957, while in the restaurant, and was so positive of his identification that he hailed a passing squad car and had the defendant arrested. Again on the night of April 12, Mrs. Clark selected the defendant from a line-up of five men and identified him as the person who had committed the robbery.

The defendant's main contention in this regard is that not once in the testimony, either during the direct examination, when Madison Clark was giving his description of the man who held him up, or during the cross-examination, did he ever mention the fact that the man who held him up had a scar approximately one and one-half inches long starting from the bridge of the nose and running upward. On cross-examination Edrice Clark was asked if she noticed any scars or moles on the man who held them up, and her answer was "No".

We feel that the failure of Madison Clark to mention defendant's scar and Edrice's failure to notice it do not create a reasonable doubt of his guilt. Precise accuracy in describing facial characteristics is unnecessary where an identification is positive. (*People* v. *Prochut,* 27 Ill.2d 298.) We have often held that the testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Solomon,* 24 Ill.2d 586; *People* v. *Pride,* 16 Ill.2d 82; *People* v. *Renallo,* 410 Ill. 372.) We have two positive identifications, corroborated by the recovery of the articles of clothing taken from Madison Clark on the night of the robbery from the defendant's person and from his sister's home. The trial court did not err in finding that the defendant was identified beyond a reasonable doubt.

The defendant further alleges the trial court erred in allowing officer Hubert Marhburn to testify in rebuttal to direct testimony given by the defendant. The defendant's attorney had made a motion to exclude the witnesses, which was granted by the court. During the trial the defendant testified that an officer grabbed him by the lapel of his suit while he was standing in a police line-up and asked Edrice Clark, "Is this the man?", to which she nodded yes. On cross-examination the defendant repeated his story and pointed out a police officer who was sitting in the first row of the courtroom as the man who had grabbed him by the lapel of his suit during the line-up. When defendant pointed out this man, the State's Attorney asked the man if his name was Marhburn; the man answered yes. Despite the order previously entered excluding witnesses, officer Marhburn was permitted to testify on rebuttal that he did not grab Miller by the collar. No objection was made to this rebuttal testimony.

It was within the discretion of the trial judge to permit the testimony of the officer in rebuttal even though witnesses had been excluded. (*People* v. *Chennault,* 24 Ill.2d 185; *People* v. *Fiorito,* 413 Ill. 123; *People* v. *O'Malley,* 404 Ill. 165.) The failure of defendant to object to such testimony clearly precludes him from alleging an abuse of discretion before this court. *People* v. *Russell,* 17 Ill.2d 328.

Finally, the defendant contends that the State's Attorney committed prejudicial error in his summation before the court by making a misstatement of the facts of the case.

During the trial, on cross-examination the State's Attorney asked Jessie Miller, the defendant's mother, whether or not her son owned a brown leather jacket, which was the type of jacket worn by the person who committed the robbery in question. Her answer was, "Now, I don't know, what all kinds of coats that boy ain't got." The State's Attorney then asked whether she had purchased a brown

leather jacket for him. Her answer was, "No, but he could have bought one."

The State's Attorney in his summation before the court made the statement that the defendant's mother testified when asked whether or not she remembered seeing a brown leather jacket, "She says, a number of jackets, and he did have a brown leather jacket."

While the prosecutor did make an inaccurate statement of the testimony of the mother with regard to this jacket, it was a minor inaccuracy which this court feels was not prejudicial to the defendant. A trial judge sitting without a jury is presumed to consider only proper argument (*People* v. *Mack,* 12 Ill.2d 151), and an error in a final arugment does not require reversal where it is unlikely it influenced the final result. (*People* v. *Green,* 27 Ill.2d 39.) We have considered the entire final argument and feel that the inaccuracy mentioned could not have prejudiced the defendant.

For the reasons stated, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*