(No. 40808.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GAREY HASKELL, Appellant.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

WARD, J., took no part.

ROGERS, STRAYHORN & HARTH, of Chicago, appointed
by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED
G. LEACH, Assistant Attorney General, and ELMER C. KIS-

SANE and JAMES S. VELDMAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a jury trial in the circuit court óf Cook County, defendant, Garey Haskell, was convicted of murder and sentenced to imprisonment for a term of not less than 14 nor more than 25 years. He appeals directly to this court, contending that a revolver admitted in evidence against him was the product of an illegal search and should have been suppressed, and that the evidence was not sufficient to support his conviction.

On November 10, 1965, at about 6:00 P.M. the body of the deceased was discovered lying face down in the rear part of the Interstate Blood Bank quarters at 729 W. 63rd Street, Chicago, Illinois, by the janitor. The Chicago police were summoned, arriving at the scene almost immediately. Their investigators initially noted that the rear entrance to the Blood Bank, leading to an alley and parking lot, was open. They observed that the victim had sustained gunshot wounds in the face and chest, that his pockets had been turned out and his shoes removed. When the decedent was positioned face up, the janitor identified him as Tom P. Thomas, an employee of the Blood Bank. The janitor told the officers he had entered the building by unlocking the front door and had not tampered with the rear entrance.

Later that evening the police questioned defendant, a co-worker of the deceased, at Area No. 3 Headquarters, releasing him after a short period. Still later, Herman Stallworth, another co-employee at the Blood Bank, who was also a Chicago patrolman, reported to Headquarters and told the investigating detectives that he had left the Blood Bank at 3:00 P.M. that afternoon, leaving defendant and Thomas alone in the building. He further related

that he had sold defendant a .22 calibre Beretta about a month earlier.

Upon receipt of this information, detectives Lee and Bencke, accompanied by Stallworth, went to defendant's home, arriving around 2:30 A.M., November 11. They were admitted into the house where they informed defendant that it was necessary for him to return to the station to make a further statement. Defendant dressed and left with the officers. When confronted with Stallworth, who had remained outside in the police car, he acknowledged purchasing a gun but stated he had resold it.

While defendant was being interrogated at headquarters, police detectives returned to his home sometime around 6:00 or 7:00 A.M. and obtained a gun, complete with holster and loaded clip, from defendant's wife. The facts and circumstances surrounding the seizure of the gun were the subject of much contradiction at the hearing on the motion to suppress it. In substance, the detectives testified that, upon questioning, Mrs. Haskell had admitted that her husband had owned a gun, and had voluntarily retrieved it from an upstairs closet and handed it over to them. Defense witnesses, who were present at the time, including Mrs. Haskell, testified that the police had obtained the gun by intimidation and deceit. The trial court denied the motion to suppress.

In addition to introduction of the gun at trial, the State's case consisted of Stallworth's testimony establishing defendant's and the victim's presence at the Blood Bank shortly before the latter's body was discovered and the testimony of a ballistics expert who rendered the opinion that three of the bullets removed from the deceased's body were fired from the gun in question. Cross-examination of this witness developed that his opinion was based solely on similarities in markings found between the evidence bullets and bullets test-fired from the evidence gun. The witness

admitted that he also found differences in markings between these bullets and could not tell how many marks of similarity and difference. existed. He stated that the bullets taken from the evidence gun were of different manufacture than those recovered from the body of the victim. He further admitted that although the police crime laboratory where he worked had the latest equipment, he performed no other test on the bullets other than viewing these markings or striations through a comparison microscope. For example, he did not measure the diameter of the evidence bullets and the diameter of the bore of the evidence gun to determine whether the bullets were larger than the bore of the weapon, or whether the lands and grooves (high and low portions) of the bullets coincided with the grooves and lands, respectively, of the gun. Nor did he determine whether the gun had been recently fired.

The State concedes that the only basis for upholding the search and seizure in the instant case from constitutional prohibition is the alleged consent of defendant's wife to the search. To defeat this claim of consent, defendant argues that his wife was not empowered to waive his constitutional right to be free from unreasonable searches and seizures, or, in the alternative, if empowered, her purported consent was not made knowingly, understandingly or voluntarily and was therefore not an effective waiver of his rights.

It is well established "that where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either." (*People* v. *Shambley,* 4 Ill.2d 38, 42; *People* v. *Perroni,* 14 Ill.2d 581.) Accordingly, the consent by a defendant's wife to a search of an apartment jointly owned or occupied by them has been held sufficient to waive her husband's constitutional immunity. (*People* v. *Speice,* 23 Ill.2d 40; *People* v. *Stacey,* 25 Ill.2d 258.) Since the record here establishes that defendant's

wife jointly occupied and had equal rights to possession of the apartment, she had authority to consent to the search, and the determinative question thus becomes whether her assent was of such a voluntary nature as to effectively waive the right against unreasonable search and seizure. As respects this issue, the prosecution, because it relies upon the consent to justify the lawfulness of the search and seizure, has the burden of proof, and this burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper* v. *North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797.

Two police officers testified at the hearing on the motion to suppress concerning Mrs. Haskell's assent to the search. Officer Lee stated that he and Officer O'Neil went to defendant's home at about 6:00 A.M. on November 11, and were admitted by defendant's wife into a room where other people were present. His partner (O'Neil) asked Mrs. Haskell if her husband owned a gun and she answered yes, going upstairs and returning with a gun and holster which she gave them. Officer O'Neil confirmed this account of the seizure with the exception that he stated that when they arrived at the door of defendant's apartment an elderly woman was standing there and that they were all admitted together by a woman other than defendant's wife.

Defendant's wife, Pat Joyce Haskell, 19 years of age, testified that she was awakened at about 7:00 A.M. on the morning in question by her sister-in-law, Carol Johnson, who also lived in the apartment, and was informed that police detectives were waiting downstairs to see her. She descended and observed three officers, one of whom asked her if Garey had a gun, to which she replied, "I don't know." He then told her that "Garey is trying to help us, * * * he's already told us he has a .22 magnum" and did she know where he kept it. She stated that she thought it was upstairs and the officer told her to "go get it", that "they were sent to get it, to pick it up." She then complied with

this request. Mrs. McGee, Pat Joyce's mother, and Carol Johnson testified corroborating this account of the seizure, expressly including the number of officers present, the time of their arrival, and their statements that defendant was cooperating with them. (It is undisputed that defendant never consented to the search or cooperated with the officers.)

Officers Lee and O'Neil were recalled as witnesses and denied making any statements that defendant was cooperating with them or otherwise improperly inducing or coercing Mrs. Haskell's actions. Officer O'Neil stated, after Mrs. Haskell returned with the gun, "I then asked her if I could take this gun with me to be used in the investigation, and she asked me if it was necessary. Then I said yes, it was."

The question of whether consent has been given is a factual matter to be initially determined by the trial court, and where the evidence on the issue is in conflict this court will accept the finding below unless it is clearly unreasonable. (*People* v. *Peterson,* 17 Ill.2d 513, 515; *People* v. *Speice,* 23 Ill.2d 40.) Because a court of review is not in a position to observe the witnesses as they testify, questions of credibility and the weight to be given their testimony must be left largely in the discretion of the trial court. (*People* v. *Peterson.*) The trial judge here made no express findings as to which testimony he believed or disbelieved, but his denial of the motion to suppress implies that he must have discredited the testimony of the defense witnesses since that testimony demands a contrary ruling on the motion. (See *Commonwealth* v. *Wright,* 411 Pa. 81, 190 A. 2d 709.) It follows that we are bound to accept the testimony given by the police detectives as true because it cannot be said that it is clearly unreasonable. We are not similarly bound, however, to accept the trial court's ruling on the motion if, as a matter of law based on the facts as established by that testimony, it cannot be said that a legally sufficient consent was given. In other words, the relative

credibility of the witnesses is not the issue before this court. The real issue is whether the testimony of officers Lee and O'Neil, taken at full value, meets the required standards for consent.

These standards have been defined in numerous instances. It is clear that "consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied." (*Amos* v. *United States,* 255 U.S. 313, 65 L. Ed. 654, 41 S. Ct. 266; *Judd* v. *United States* (D.C. cir.), 190 F.2d 649, 651.) The prosecution must show a consent that is "unequivocal and specific" (*Karwicki* v. *United States* (4th cir.), 55 F.2d 225, 226), "freely and intelligently given". (*Kovach* v. *United States* (6th cir.), 53 F.2d 639.) "Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson* v. *Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.

When measured by these standards, we think that the uncontradicted evidence in this case, considered with that most favorable to the State where conflict exists, falls short of establishing a legally effective waiver of the right against unreasonable search and seizure. Defendant's wife was 19; her home was invaded twice by police officers in the early morning hours. The first time her husband was taken to the police station; the second, the officers returned without a search warrant to obtain evidence. When she was confronted by the officers they were already in the apartment, having been admitted by another. She was ordered to get the gun but not informed that she had the right to resist such order. While this court has stated that it is not prepared to require that the People show that the consenting party was advised of rights secured by the fourth amendment (*People* v. *Ledferd,* 38 Ill.2d 607, 610), the failure to do so is a factor bearing on the understanding nature of the consent. (*Cf. Haynes* v. *Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336.) She produced the weapon,

asking if it was necessary that she turn it over to them and was told in no uncertain terms that "yes, it was." Under these circumstances, we hold that the State did not meet its burden of showing a knowing and free consent to the seizure and that therefore the trial court's denial of the motion to suppress was erroneous.

Because the admission of the revolver into evidence was obviously prejudicial to defendant, his conviction cannot stand; therefore, we need not comment on his other allegations of error. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice WARD took no part in the consideration or decision of this case.