(No. 42899.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* AUBREY LEE HOLLOMAN, Appellant.

*Opinion filed September 29, 1970.*

312

Ward, J., took no part.

James B. Haddad, of Chicago, appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane and James W. Reilley, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Kluczynski delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County, defendant, Aubrey Lee Holloman, was found guilty of the crimes of possession of narcotic drugs (Ill. Rev. Stat. 1965, ch. 38, par. 22—3), and possession of hypodermic needles and syringes (Ill. Rev. Stat. 1965, ch. 38, par. 22—50). He was sentenced to concurrent terms in the Illinois State Penitentiary of from two to eight years on the former charge and to six months on the latter.

In this direct appeal, Holloman claims that the trial court improperly denied his motion to suppress certain evidence; that the trial court, in denying the motion to suppress ignored its statutory obligation to make findings of fact (Ill. Rev. Stat. 1967, ch. 38, par. 114—12(e)); and that the evidence relating to the crime of possession of hypodermic needles and syringes was insufficient to establish his guilt beyond a reasonable doubt.

At the hearing on the motion to suppress, Officer John

Walsh of the Chicago Police Department testified that at about 9:00 P.M. on November 14, 1965, he and his partner, Officer Daniel Nagle, observed a vehicle, driven by defendant, make a turn from Princeton Avenue into 72nd Street in the city of Chicago, without first giving a signal of intention to turn—a municipal ordinance violation. The officers pursued and stopped the vehicle a short distance away. Defendant exited from his automobile and joined Officer Walsh between the two parked cars where he was then informed of the reason for the detention and requested to produce his driver's license and motor vehicle registration certificate. Walsh stated that when defendant was unable to produce the items requested he placed him under arrest for failure to have in his possession a valid driver's license. Walsh then made a search of defendant's person "for weapons for my own protection."

It was adduced that, before the grand jury, Walsh stated that he arrested and searched defendant "because he was backing away from me, while we were talking, while he was looking for his driver's license * * *." In conducting the search Walsh discovered a three-by-five-inch brown manila envelope approximately one inch thick, "tucked inside * * * [defendant's] belt at the center of his body in the back." At first Walsh testified that he believed the envelope was sealed when he discovered it, however, he later stated that he could "not recall if it was sealed or it wasn't." Officer Nagle testified that the envelope was not sealed but merely folded over. In any event, Walsh looked into the envelope and "found some loose white powder." Subsequent laboratory analysis of the substance disclosed that it was heroin, however, at the time of its discovery on defendant, Officer Walsh did not know what the substance was.

Defendant was then transported and his car was taken to the 7th District Police Station where a search of his automobile produced two tin covers, four syringes and four needles which had been hidden in the trunk.

Officer Nagle's testimony amounted to a reiteration of the facts as testified to by Walsh.

Defendant's testimony consisted of a denial of the commission of the traffic violation for which he was stopped and further, he asserted that on the night in question he had in his possession a valid Illinois driver's license. The trial court denied the motion to suppress without making any finding of fact.

Holloman claims that his motion to suppress was improperly denied. Apparently conceding the validity of the police officer's actions in searching him for weapons, defendant contends that the search became unlawful when Officer Walsh opened the envelope found on defendant's person and examined its contents. He reasons that the envelope was discovered pursuant to a summary search for weapons and because the officer patently conceded that he knew the envelope did not contain a weapon, the examination of the contents thereof was improper. In support of his position defendant cites *People* v. *Machroli* (1969), 44 Ill.2d 222; *People* v. *Tate* (1967), 38 Ill.2d 184; *Amacher* v. *Superior Court* (1969), 1 Cal. App. 3rd 150, 81 Cal. Rptr. 558; *Bailey* v. *State,* 246 Ark. 355, 438 S.W.2d 321; *Backstrom* v. *United States,* (D.C. Ct. of App. 1969), 252 A. 2d 909; and *People* v. *Adam* (1969), 1 Cal. App. 3rd 486, 81 Cal. Rptr. 738.

*Machroli* involved an arrest pursuant to a domestic disturbance. The police had been summoned to the apartment where defendant was living. When they arrived, they found defendant in a T-shirt and shorts, and after some questioning placed him under arrest and ordered him to get dressed. As defendant was putting on his trousers, the police officer noticed him remove a small white box from his pants pocket and place it on a dresser. After defendant left the bedroom the officer went back to the dresser, picked up the box, opened it and found some white tablets which subsequently proved to be narcotics. Under those facts, we held there was

"no justification other than curiosity for the officer's conduct in entering the bedroom after defendant had left it and taking possession of the box." 44 Ill.2d at 225.

In *Tate,* defendant was stopped in the early evening by two police officers for making an improper turn. Defendant was asked to produce a valid driver's license, which he did. In conversing with the defendant, the police noticed a paper envelope with a glassine window sticking out of defendant's shirt pocket. Through the window, one of the officers saw a tissue-weight paper with bluish lettering inscribed on it. One of the arresting officers testified that he then asked defendant where he worked; that defendant replied with the name of a well known policy wheel; and that defendant was then arrested and the envelope seized. (The envelope was found to contain policy slips.) However, testimony from the other arresting officer obscured the true sequence of events surrounding the arrest. In reversing and remanding for further proceedings, we held that in order for the policy slips to be admissible, they had to be obtained pursuant to a lawful search and that it was necessary that circumstances exist which would reasonably indicate that the police were not dealing with the ordinary traffic violator but with a criminal. Essential to a determination of that issue was whether defendant informed the police of his employment before or after the search.

*Amacher* involved a protective search of defendant for concealed weapons. Defendant had a reputation for being hostile to police officers and was also a known narcotics user and "pusher." While searching defendant, the police officer felt a hard object in defendant's front jacket pocket which turned out to be a flip-top cigarette container. The police officer examined the contents and found marijuana. In suppressing this evidence the court held that by opening the package of cigarettes the scope of the search became unduly explained and was no longer reasonably related to the circumstances which justified the frisk.

In *Bailey,* police officers went to defendant's home to execute a search warrant (subsequently held invalid). Not finding defendant present, the officers went to one of his known hang-outs where they located him and took him into custody for the purpose of having defendant present at the execution of the warrant. Prior to placing defendant in the police car, however, the officers searched him for weapons. One of the officers took defendant's billfold from his pocket and while passing it to his fellow officer, a tightly rolled cigarette fell out. The billfold was then thoroughly inspected and three small brown envelopes were discovered—all contained marijuana. In finding the search of defendant's billfold unlawful, the court held that the taking of the billfold had no reasonable relation to the object of the search—weapons.

Reversals under similar factual situations were obtained in both *Backstrom* and *Adam.*

After thorough consideration, we believe that the facts of the case at bar are factually distinguishable from the cases which defendant relies upon.

Holloman was stopped by the police for a traffic violation. When he could not locate his driver's license and motor vehicle registration certificate, he started "backing away" from the investigating officers. Apprehensive as to his own safety and that of his fellow officer, patrolman Walsh placed defendant under arrest. In making a cursory pat-down of the defendant's person for offensive weapons, Walsh touched upon a hard object hidden in the small of Holloman's back. Not knowing its exact nature he removed the object which turned out to be a small brown manilla envelope. Coupling defendant's furtive behavior with the envelope's secretive location, we believe that the officers acted properly in examining its contents to determine if criminal activity was involved. Unlike either *Machroli,* *Amacher* or *Bailey,* the evidence seized was not discovered in an apparently innocuous place. And, unlike *Tate,* the

police here had justification to believe that criminal activities had occurred. After examining the totality of circumstances surrounding the search we find that they would " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate [citations]." *Terry* v. *Ohio* (1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; see also *People* v. *Thomas,* 31 Ill.2d 212.

Turning next to the search of Holloman's automobile and the refusal of the court to suppress the evidence found therein, we find no error. The search of the automobile occurred shortly after the defendant had been taken to the police station. At that time, the police had either definitely determined that the substance found on defendant's person was narcotics or they had a strong suspicion, for in expressing his reasons for conducting the search, Officer Walsh stated: "Any car that has possibly contraband is always held for the State Narcotics Agent." Under the circumstances, the search was proper. See *Chambers* v. *Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.

Holloman claims that the trial court in denying his motion to suppress ignored its statutory duty to make findings of fact. Section 114—12(e) of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—12(e)) provides: "The order or judgment granting or denying the motion [to suppress evidence illegally seized] shall state the findings of facts and conclusions of law upon which the order or judgment is based." However, in *People* v. *Haskell,* 41 Ill.2d 25, where the trial judge also made no express findings of fact, we held that "his denial of the motion to suppress implies that he must have discredited the testimony of the defense witnesses since that testimony demands a contrary ruling on the motion. [Citation.] It follows that we are bound to accept the testimony given by the police detectives as true because it cannot be said that it is clearly unreasonable." (41 Ill.2d at 30.) Accordingly, in the present case we are not confronted with the question of the

credibility of the officers but rather whether their testimony, "taken at full value, meets the required standards" (41 Ill.2d at 31) of a reasonable search. Applying this standard, we hold there was no reversible error.

Finally, defendant argues that the evidence relating to the crime of possession of hypodermic needles and syringes was insufficient to establish his guilt beyond a reasonable doubt. In essence, however, defendant is actually claiming that the chain-of-custody was not proved.

At the hearing on the motion to suppress the arresting officers testified that the hypodermic needles and syringes were discovered in the trunk of the vehicle which Holloman had been driving. The discovery occurred approximately thirty minutes after defendant's arrest on the street. However, while defendant was being transported to the police station, the exclusive control of his vehicle was transferred to some unnamed police officer, who drove the automobile to the police station. It was established that this unnamed officer also took possession of the key to the trunk which later yielded the needles and syringes.

At the trial, which consisted of a stipulation of the evidence heard on the motion, defense counsel stated: "At this time, your Honor, the defendant will enter a plea of not guilty and we will stipulate to the evidence already heard as well as to the chain of evidence and the chemist's report now in possession of the state."

Defendant now contends that because the unnamed officer who transported his (Holloman's) vehicle to the police station was not called to testify, the State failed to prove him guilty beyond a reasonable doubt on the charge of possession of hypodermic needles and syringes. We do not agree. Defendant is, for the first time interposing this objection to the evidence after explicitly stipulating to the chain of evidence in the trial court. The failure to present a proper and timely objection constituted a waiver of error, if any, and defendant may not now complain, especially in light of

the fact that he stipulated to the evidence to which he now objects. See *People* v. *Adams*, 41 Ill.2d 98.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.