THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES F. EASTIN, Defendant-Appellant.

(No. 70-45;

Fifth District—November 14, 1972.

514

JONES, J., specially concurring.
G. MORAN, P. J., dissenting.

Fred McCollum, of Flora, for appellant.

H. Carroll Baylor, State's Attorney, of Louisville, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant appeals his conviction in a jury trial of the offense of indecent liberties with a child in violation of Chapter 38, Section 11—4(3), Illinois Revised Statutes. Defendant asserts that the trial court committed error in denying defendant's motion to suppress evidence obtained as a result of an illegal search and seizure and in refusing to permit defendant to reopen his case to present evidence which corroborated the testimony of an alibi witness, and that the State failed to prove defendant's guilt beyond a reasonable doubt.

As part of its case the State introduced as exhibits a green tee shirt and a pair of paint covered black boots with a hole in them. These items had

been taken from a trailer located on Austin Avenue in Flora, Illinois rented by defendant's brother with whom defendant was residing. The exhibits were the subject of defendant's motion to suppress upon which the court held a hearing prior to trial. After hearing evidence on the motion the court denied the motion to suppress and at the trial admitted the tee shirt and boots into evidence, over objection.

At the hearing on the motion to suppress, a deputy sheriff and an agent of the Illinois Pardon and Parole Board, testified in that order.

The deputy sheriff testified that the first time he went to the trailer was "around noon" with the agent at the request of the agent; that the agent knocked and they were invited in by defendant. The deputy saw the tee shirt and boots; the shirt hanging on a chair, the boots on the floor against the west wall; he saw them only after he went inside; and they "were in plain view once you were inside the trailer". The deputy knew that defendant's brother had rented the trailer. The agent arrested the defendant, the deputy did not. He testified that "so far as defendant knew he was being picked up for parole violation". They then took the defendant to the police station. The deputy and agent, after a conversation between them, went back to the trailer; 10 or 15 minutes "after we had brought the defendant to jail". Upon reaching the trailer they found no one there. The agent knocked, opened the door, and walked in while the deputy remained outside. The agent brought the tee shirt and boots out. In answer to an inquiry as to whether he could see the shirt and boots from outside the door or from the inside, he testified, "I couldn't see them. I think they could have been seen really". Neither the agent nor deputy had a search warrant and the defendant had not been before a judge, was not represented by counsel and had not been charged with the instant crime. He testified that on that day he did not know to whom the shirt and boots belonged, and that after defendant was charged with this crime, and before defendant had counsel, he asked defendant if the shirt and boots belonged to him, and defendant said they did.

The agent testified that on August 20, 1969 and prior thereto, the defendant was a parolee from the Illinois State Penitentiary where he had been incarcerated as a result of a felony conviction in Macon County. One of the conditions of his parole was that he was not to leave his assigned area in Decatur. In response to instructions the agent had received from his Springfield office, he went to the defendant's brother's trailer seeking the defendant. Defendant invited him in. He asked the defendant his reason for departing his assigned area in Decatur and defendant replied that he wanted to go back there. While in the trailer he saw the tee shirt and boots. The agent then left the trailer and called Springfield for instructions and was directed to pick up defendant and hold him pending

an investigation. The agent then requested the assistance of the deputy sheriff in arresting defendant. Upon arriving at the trailer with the deputy, the agent knocked on the door and was invited by the defendant to "come in". Both defendant and his brother were present at the time. The agent and deputy, who was in uniform, then entered the trailer and the agent told defendant that the Springfield office "had advised me to take him into custody and hold him pending an investigation with reference to employment and residence in Decatur". While in the trailer on this second occasion the agent again saw the tee shirt and boots. The agent arrested defendant and he and the deputy took the defendant to jail. At the jail the deputy asked about seeing the boots and tee shirt and asked if it would be possible for the agent to get them. The agent went back and got the boots and tee shirt, which were in the same place as when defendant left the trailer. At the time the agent arrested defendant, the deputy did not arrest defendant. The agent admitted that he had no paper issued by any court authorizing him to go upon the premises and take anything from the trailer. He testified there was no one there when he went back the third time. He had been told that defendant was living with George Eastin, and testified that the tee shirt and boots had nothing to do with his coming to Flora to see defendant. "It was a routine assignment."

The State presented no evidence other than by way of cross examination of these two witnesses, on the motion to suppress. There was no evidence that the boots or tee shirt were seen from outside the trailer when they went back and found no one there to consent to their entry, and the door was closed. Neither was there any evidence that defendant was on that date a suspect on the indecent liberties charge, nor was there testimony that the person who allegedly committed that crime had any connection with the articles seized, or that those articles were any factor of identification of the person who committed the alleged crime. In fact, that any crime in which a tee shirt or boots might be circumstantial evidence had been committed is not revealed by the record of the hearing on the motion to suppress, nor is there any evidence that a crime had been committed, or that the authorities had reasonable gounds to believe defendant had committed any illegal act, other than violating his parole by leaving Decatur. Although the property was seized at midday on August 20, 1969 (Wednesday) there is nothing in the record to indicate any reason for failure to get a warrant, other than the agent's erroneous impression as expressed at the hearing, "By virtue of my office I had a search warrant" and that he had a right to enter the trailer on the third occasion, "by virtue of my position as Adult Parole Agent". Neither is there anything in the record to indicate that the articles seized were contraband

or that the trailer from which they were taken was in the custody of the authorities.

On this evidence, produced by the two witnesses called by the movant, and cross examined by the State and argument of counsel, the court summarily denied the motion to suppress, without "stating the findings of facts and conclusions of law upon which the order or judgment" was based.

Our statute on Motions to Suppress, ch. 38, sec. 114—12(e), Ill. Rev'd. Stat. 1969, provides:

> "The order or judgment granting or denying the motion shall state the findings of facts and conclusions of law upon which the order or judgment is based."

Our Supreme Court has recently had opportunity to review cases in which there was a failure by the trial court to comply with the statute; *People v. Haskell* (1968), 41 Ill.2d 45, 241 N.E.2d 430; *People v. Donel* (1970), 44 Ill.2d 280, 255 N.E.2d 454; *People v. Holloman* (1970), 46 Ill.2d 311, 263 N.E.2d 7. See also, *People v. Drury*, 130 Ill.App.2d 798, 268 N.E.2d 460 (4th District 1971), in which the defendant again expressly raised as error the failure of the trial court to make the findings of fact required by 114—12(e) when it denied his motion to suppress bloodstained clothing. The Court upheld the denial of the motion to suppress stating:

> "While it is preferable that there be findings of facts and conclusions of law, the absence of such does not require a reversal if, as here, it can fairly be said that the record and evidence would sustain the ruling of the trial court notwithstanding the absence of such findings. Here the trial-court ruling is sustainable by consent or permissible area of search."

■■ A review of these cases indicates that *if the evidence produced,* at either the pretrial hearing on a motion to suppress or a hearing on the question at the trial, *sustains the order of the trial court,* compliance with section 114—12(e) is not mandatory. We find no authorities which excuse the trial court from compliance with the Statute *when no evidence is produced* which will sustain the order of the trial court. Furthermore, in *People v. Braden*, 34 Ill.2d 516, 216 N.E.2d 808, it was held that the trial court's ruling on a motion to suppress is not final and may be changed or reversed at any time prior to judgment, and that additional testimony at the trial may cure the error in denying the preliminary motion to suppress, the latter being only a procedure of convenience to eliminate time consuming collateral inquiries during the trial of the principal issue. In that case, the search was incidental to a lawful arrest, and the question was whether it was unreasonably extended by the search of a closet inside

the apartment and a refrigerator outside the door of the apartment; the Court held it was not in view of the evidence presented at the trial.

We are therefore compelled to review the evidence to determine whether the error in denying the pretrial motion to suppress was cured; and the trial court thus relieved by the testimony at the trial of its duty to state the findings of fact and conclusions of law on which its original order denying was based, as well as its denial of the objections of defendant and renewal of the motion to suppress made during trial.

The articles were marked as exhibits at the time the parole officer was called as a witness. He testified that he first saw the exhibits at the house trailer, that he had had them in his possession and gave them to the deputy sheriff. The deputy sheriff testified that he was in charge of the investigation of this case, that the exhibits were received from the parole officer on the day they were seized, and since that time had continuously been in his possession. He further testified that he had a conversation with defendant on the day following the seizure of the exhibits. Upon being asked what was said with reference to the exhibits, objection was made and an outside-the-presence-of-the-jury conference was held in which defendant's counsel objected to the testimony of the conversation on the basis that at that time defendant had no counsel. The prosecutor answered that it was not interrogation because at the time of the conversation defendant had not been arrested and charged with the crime, and that he was ready to prove that defendant "was advised of all his constitutional rights". No evidence of any warning in compliance with *Miranda v. Arizona* (1966), 384 U.S. 436, was presented and no offer of proof was made. The motion to suppress was renewed, the motion denied, and the objection overruled. The witness then testified, "I asked him if the boots and tee shirt belonged to him and he answered yes". On cross examination, the deputy testified that he first learned of this incident on August 9th.

The exhibits were then offered into evidence and admitted over objection. The prosecuting witness subsequently testified and then identified the exhibits as having been worn by the defendant at the time of the alleged offense.

Here neither the evidence on the motion to suppress or that produced at the trial, *sustains the order of the trial court* in its denial of the motion to suppress or in its admitting the articles into evidence over objection. As in *Holloman, supra,* we are not confronted with the question of credibility of the officers, but unlike it find that the testimony does not even purport to meet the required standards of proof by the State to overcome the presumption of unreasonableness of a warrantless search and seizure.

■■ The basic premise enumerated throughout the development of

the doctrine of search and seizure by the United States Supreme Court has been that all searches and seizures without warrants are *per se unreasonable* and in conflict with the Fourth and Fourteenth Amendments with certain exceptions. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022; *Katz v. United States,* 398 U.S. 347; *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407.) The rule further provides, "When the right of privacy must yield to right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agency". *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367 as cited as controlling in *Coolidge, supra.*

■■ The standards for search and seizure by the various States are those of the Fourth Amendment to the United States Constitution as applied through the due process of law clause of the Fourteenth Amendment. The requirements of the Fourth Amendment have been held to be basic to a concept of ordered liberty. *Coolidge, supra; Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359; *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684; *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623.

■■ *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, and later cases, clearly provide that by adherence to judicial process, the burden is on the prosecution to show exceptional circumstances which will make the search or seizure reasonable, such as the exigencies of the situation, which will create an exemption from the prohibition against unreasonable searches and seizures; in those situations in which it is contended an exemption lies, the burden is on those seeking the exemption to show the need for it. In other words, the prosecution has the burden of proving a warrantless search or seizure is reasonable. This requirement has most recently been reiterated in *Coolidge, supra.*

■■ We have examined both *People ex rel. Jeffers v. Brantley,* 44 Ill.2d 31, 253 N.E.2d 378, and Ch. 108, sec. 204(e) Ill. Rev'd. Stat. 1969, both of which deal with the status of a parolee, and find nothing in those authorities that suggests that this defendant was not entitled to constitutional protection from illegal seizure. In *Brown v. Kearney, Warden,* 355 Fed.2d 199, the Court declared that "a parolee is entitled to constitutional protection from illegal search and seizure". In *U.S. v. Hallman,* 365 Fed.2d 289 at 291, the Court said, "Hallman was not without basic rights because he was a parolee". (Citing cases.) And at 292 said, "The veil afforded by Provenzano's position as Hallman's parole officer cannot here serve as a shield against what was plainly the action of the arresting officers to effect an illegal search."

■■ The State's brief contends that in the present case there was no search and that seizure of articles in plain view cannot be considered unreasonable. Both freedom from unlawful search and seizure are pro-

tected by the Constitution and whether a search or a seizure is here involved is of no consequence—there is no question that the articles were seized without a warrant, by officers without the consent of defendant or his brother who was in possession, from the home of the brother who was not arrested or suspected of any crime and was not arrested, and that the officer who made the seizure was not legally on the premises at the time of the seizure. As was said in *Preston v. United States*, 376 U.S. 264, 84 S.Ct. 881, "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest". Plain view, itself is never, standing alone, enough to justify a warrantless seizure. The articles were not contraband nor instrumentalities of crime. The plain view doctrine only applies when the evidence seized is incident to the arrest, or is contraband and a seizure incident to arrest must be justified by the circumstances, such as dangers of destruction, or harm to the officers or the items being known contraband, and the officers are lawfully on the premises. See *Coolidge* and cases cited therein. Furthermore, the discovery of the evidence in plain view, must be inadvertent (here it had been in plain view on previous occasions when it was inadvertently discovered, but was not at the time of seizure) and the officers had made a special trip knowing the description and location well in advance with ample opportunity to obtain a valid warrant. In *Coolidge, supra,* the Court pointed out at 91 S.Ct., 2040—1, 405 U.S. 269:

> "If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of 'Warrants  *  *  *  particularly describing  *  *  *  the things to be seized'. The initial intrusion may, of course, be legitimatized not by a warrant but by one of the exceptions to the warrant requirement, such as hot pursuit or search incident to lawful arrest. But to extend the scope of such an intrusion to the seizure of objects—not contraband or stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rules that no amount of probable cause can justify a warrantless seizure."

Even the dissenters in that case would require probable cause for the seizure, and that the officers were lawfully at the place they made it; all agree that what may be an unreasonable search of a home may be reasonable in the case of an automobile. Here, we would point out that the record made on both the motion to suppress and on the objection during

trial presents no probable cause for the seizure. In *Coolidge, supra,* the Court went on to point out, "The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property."

■■ We are aware that *Coolidge* was a divided opinion, but our examination of the concurring and dissenting opinions leads to the conclusion that any warrantless seizure *without probable cause* is prohibited by the Constitution. It was only after the articles were presented for admission, and the court had ruled, and before the complaining witness had identified them as being worn by her attacker, that probable cause could even be inferred in the present case.

The State's brief suggests by cited cases that since the motion to suppress did not allege the property seized to be the property of the defendant, and he asked for no return of it, that he cannot complain of the seizure or the introduction of the articles into evidence. The point is not argued. As we have pointed out it was the deputy who testified that defendant claimed ownership of the seized articles and we need not further consider such contention. See *Jones v. U.S.,* 80 S.Ct. 724, 362 U.S. 262, and *People v. DeFilippis,* 34 Ill.2d 129, 214 N.E.2d 897.

In *DeFilippis, supra,* our Supreme Court adopted from *People v. Colonna,* 140 Cal.App.2d 705, 295 P.2d 490, the following:

"The government cannot violate the fourth amendment and use the fruits of such unlawful conduct to secure a conviction. * * * These methods are outlawed and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men * * *. His right to object to the use of the evidence must rest not on a violation of his own constitutional rights, but on the ground the government must not be allowed to profit by its own wrong and thus encourage the lawless enforcement of the law."

Our Court went on to say "* * * [T]here is nothing which inhibits us from extending the principle of *Jones* in such a way, and to such an extent, as to insure that the prohibition of our own constitution against unreasonable search and seizure may be made fully effective, and that its protection is not unfairly denied".

■■ Here the State has failed completely to even offer any proof that the exigencies of the situation made a warrantless seizure imperative, or that there was probable cause for the seizure. Under such circumstances, there was a lack of diligence on the part of the trial court in its failure to comply with the requirements of stating findings of facts and conclusions

of law upon which his denial of the exclusion was based, and we would be justified in remanding this record for examination below to make such findings and conclusions.

However, our examination of the record discloses nothing to support denial of the exclusion, and there are no findings or conclusions of law which could be made from it to support the court's ruling, and we therefore determine whether this cause should be affirmed under the doctrine of harmless error. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

■■■ Defendant contends that the testimony of the prosecuting witness was uncorroborated by any competent testimony or evidence and that defendant's guilt was not proven beyond a reasonable doubt. While it is true that there were no other witnesses to the illicit acts, as is usually the case, corroboration is found in the actions of the complaining witness immediately following the incident. She ran into her home screaming, shaking and trembling all over and had in her hand a quarter that had been given to her by the defendant. Prior to being called to testify the prosecuting witness was examined out of the presence of the jury for the purpose of determining her capacity as a witness. She testified that she understood the oath and knew the difference between telling the truth and telling a lie. She also satisfactorily answered other questions put to her by the court and the attorneys. At the conclusion of this hearing the court found her competent to testify and denied defendant's motion to exclude her testimony. In *People v. Davis,* 10 Ill.2d 430, 140 N.E.2d 675, the court said:

> "If the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent. Not age, but the degree of intelligence of a child, determines the question of the child's competency. (Shannon v. Swanson, 208 Ill. 52; State of Segerberg, 131 Conn. 546, 41 A.2d 101.)"

It is apparent that she understood the questions asked of her and had no difficulty or hesitation in forming her answers. She told of her ample opportunity to observe the defendant throughout the incident and she positively identified him in court. She told of his walking with a limp, his following her to and from the drug store and described the clothes he was wearing at the time. Our examination of the record of the testimony of the complaining witness leaves no doubt that she was indeed a competent witness and that the court properly exercised his discretion in permitting her to testify, and that reasonable men, from the evidence properly admitted would have agreed upon defendant's guilt, had the improper evidence not been allowed. Testimony of one witness alone,

if it is positive, and the witness credible is sufficient to convict. (*People v. Miller*, 30 Ill.2d 110, 113, 195 N.E.2d 694.) The other evidence is so great and convincing as to be considered overwhelming. The exhibits only corroborated her description of the clothes her attacker was wearing; they were not the instrumentalities or the fruits of the crime.

Although the Supreme Court reversed a number of fourth amendment cases since *Chapman, supra*, without discussing the harmlessness of the erroneously-admitted evidence, it indicated in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, that such errors of search and seizure could be harmless, citing *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, in which as is true here, the case against defendant "was not woven from circumstantial evidence".

■■ Finding that the trial court did not abuse its discretion in refusing to permit defendant to reopen the case to hear evidence to corroborate an alibi witness, and that no prejudicial errors intervened in defendant's trial, we affirm.

We take particular note of, and commend appointed counsel, in both the trial court and this court, for thoroughness and excellence in preparation and presentation of this cause.

Judgment affirmed.

Mr. JUSTICE JONES specially concurring:

I agree with Mr. Justice Eberspacher that the admission of the T-shirt and boots into evidence in this case would be harmless to the defendant and that the judgment of the trial court should be affirmed. However, I do not agree that such evidence was illegally seized or that the defendant was deprived of his fourth amendment protection against illegal search and seizure.

In his opinion Mr. Justice Eberspacher discounts the status of the defendant as a parolee and finds nothing in the case of *People ex rel. Jefferson v. Brantley* (1969), 44 Ill.2d 31, 253 N.E.2d 378, *cert.* denied 400 U.S. 834, and ch. 108, sec. 204(e), Ill. Rev. Stat., to suggest that the defendant is not entitled to the constitutional protection against illegal seizure. I respectfully differ with his interpretation of these authorities and with his reliance upon the 1966 Federal Circuit of Appeals cases of *Brown v. Kearney, Warden*, 355 F.2d 199 and *U.S. v. Hallman*, 365 F.2d 289.

The *Brantley* case was not concerned with search and seizure but rather dealt with the right of a parolee to fourth amendment protection against the issuance of an arrest warrant without probable cause being established by a sworn complaint. In considering the legal status of a parolee our Supreme Court there held that until final discharge a prisoner during

parole should be considered in the legal custody of the officers of the Department of Public Safety, and that the State has jurisdiction over him until he has served the maximum term of his sentence or until the sentence has been terminated according to law. To the same effect is the cited statute. Similar statutory provisions are contained in art. 14, sec. 2 of the new Illinois Unified Code of Corrections (Ill. Rev. Stat., ch. 38, sec. 1003-14-2), effective January 1, 1973. The protection afforded by the fourth amendment to the constitution is obviously no less applicable to unreasonable searches and seizures than it is to the issuance of warrants without probable cause. I think it is clear from *Brantley* that if a parolee, because of his peculiar "in-custody" status, is not entitled to the fourth amendment protection against issuance of warrants without probable cause, he is likewise not entitled to the fourth amendment protection against unreasonable searches and seizures. Also see *People ex rel. Johnson v. Pate* (1970), 47 Ill.2d 172, 265 N.E.2d 144, where our Supreme Court held:

> "Admission to parole does not, of course, entitle a prisoner to his discharge. It is simply an alternative method by which he may serve his sentence; a part of the rehabilitative process applicable to those whose history, conduct and prognosis, in the judgment of the Parole and Pardon Board, justify such action. Although not confined in prison, a parolee remains at all times in the custody of the Department of Public Safety, and subject to the authority of the Parole and Pardon Board until expiration of the sentence."

A case with facts strikingly similar to the case under consideration is that of *United States ex rel. Santos v. New York State Board of Parole* (2nd Cir. 1971), 441 F.2d 1216 *cert.* denied 404 U.S. 1025. There the question for review was whether the appellant, a parolee under the custody of the New York State Board of Parole, was deprived of his fourth amendment rights by a search of his residence, without a warrant, conducted by his parole officer in the presence of a police officer after which evidence seized was used by the police for purposes of a new prosecution rather than for the revocation of appellant's parole. The defendant was not present at the time of the search nor was he arrested in conjunction therewith. Prior to pleading guilty, the appellant moved to suppress the seized evidence, contending it had been obtained in violation of his fourth amendment rights. The motion was denied and affirmed upon appeal and a writ of *certiorari* was denied by the Supreme Court of the United States. Thereafter, appellant brought an action of *habeas corpus* which reached the Circuit Court of Appeals. The appellant contended that the fourth amendment bestows on parolees rights coextensive with those guaranteed to ordinary citizens. The court there held:

"Without attempting to define precisely the extent of Fourth Amendment protection against searches and seizures which a parolee might have in the abstract, it is indisputable that the Fourth Amendment affords protection only against unreasonable searches. A search which would be unlawful if directed against an ordinary citizen may be proper if conducted against a parolee. *United States ex rel. Randazzo v. Follette*, 418 F.2d 1319, 1322, n.7 (2nd Cir. 1969).

As Mr. Justice Steur stated in the Appellant Division's review of the present case:

'* * * The very concept of parole entails a degree of supervision of parolees consonant with its purposes. Included within that supervision would be such searches as would reasonably be called for. It cannot be questioned that the parole officer had reasonable grounds for investigation as to whether the defendant here was violating his parole and that the search was a proper incident of that investigation. In that context, it was reasonable.'"

To me the import of these authorities is clear. The seizure of the T-shirt and the boots from the defendant-parolee Eastin, under the circumstances presented in this case, was fully justified and the trial court was correct in denying defendant's motion to suppress.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

I object to our court's condoning a lawless act of the State in this case by invoking the "harmless error" doctrine.

The first ten Amendments to the Constitution of the United States were epochal achievements in the history of efforts to protect human freedom. It is ironic that today many people misinterpret our courts' preservation of the rights therein mandated as frustrations or even abortions of justice.

Here, a violation of the Fourth Amendment is involved. It was restated nearly verbatim in the early Constitutions of Illinois and now has been expanded to meet current problems but in no way diluted. The protection of privacy intended by its framers is a highly valued right, which like many others, is probably prized more when lacking than when it can be taken for granted. Mr. Justice Brandeis described the "right to be let alone" as "the most comprehensive * * * and the * * * (one) most valued by civilized man." *Olmstead v. United States* (1928), 277 U.S. 438, 478, (dissenting opinion).

This right is an issue in this case because evidence was admitted during the trial which was obtained by warrantless seizure without probable cause. Its admission was a constitutional error under both the United States and the Illinois Constitutions. The resultant question is whether the

conviction which resulted should be affirmed or reversed under the doctrine of harmless error.

The United States Supreme Court in *Chapman v. California* (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824, 24 ALR3d 1065, admonished against giving too much emphasis to "overwhelming evidence" of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. In his opinion concurring in the result, Justice Stewart quoted from *Glasser v. United States* (1942), 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680: "The right to have the assistance of counsel is too fundamental and absolute to allow court to indulge in nice calculations as to the amount of prejudice arising from its denial." He expanded on this point, describing other constitutional errors which, by his reasoning, require automatic reversal.

If anything, Illinois courts have been even more strict in their treatment of constitutional errors. For example, in *People v. Stoval* (1968), 40 Ill.2d 109, the Supreme Court of Illinois reversed convictions of burglary and theft because there was a question of a conflict of interest in that defendant's counsel also represented the victim. The court did so even though there was no showing that the accused's defense was not conducted with diligence and resoluteness.

The prosecuting witness testified that defendant enticed her into the Christian Church and there committed the acts for which he was indicted. No other witness saw defendant on the date of the alleged crime. The only corroboration of the testimony of the prosecuting witness relative to the facts was that she left the Wyatt home, arrived at the drug store, picked up the medicine and returned to the Wyatt home. The prosecuting witness identified the boots and tee shirt as having been worn by the defendant at the time of the alleged offense. Defendant did not testify in his own behalf. His defense was an alibi.

A brother-in-law of the defendant testified that defendant was with him at his home in Flora from 3:00 P.M. until dark and then went with him to the Four Sisters Manufacturing Company in Flora, Illinois, where he was employed as a janitor and helped him clean up the factory until about 10:30 P.M., when he took him back to the trailer home. He also testified that he gave defendant a pair of boots on the same day which were offered in evidence as defendant's Exhibits 1 and 1A. Such boots were not of the type admitted into evidence on behalf of the People.

A sister of the defendant testified to defendant's whereabouts from about 3:00 P.M. until about 20 minutes to 8:00 P.M., and said she saw him later the same night in company with his brother-in-law at the Four Sisters Manufacturing Company.

Another of defendant's sisters saw about 9:00 P.M. with the brother-in-law at the Four Sisters Factory.

A People's rebuttal witness testified that the records of the Four Sisters Company showed that the brother-in-law went to work at 9:00 A.M. on August 9 and finished his work at 5:15 P.M. In surrebuttal the brother-in-law testified that the time record was incorrect and that he had in fact worked for Bill Given, a Texaco distributor, on August 9 until noon.

After the State and the defendant had rested and after the conference on instructions, defendant made a motion to reopen the case and allow additional evidence from a witness who was not previously available. An offer of proof was made. Nell Given, wife of William Given, the Texaco distributor, testified that she kept the books for her husband and that defendant's Exhibits 3, 4, 5 and 6 showed that the brother-in-law worked for William Given until noon on August 9, 1969, and withdrew gas from the bulk station and delivered the same to various customers. The motion to reopen was denied, the offer of proof was denied, and the mentioned exhibits were not admitted.

Before it can be said that a Federal constitutional error can be held harmless, a reviewing court must be able to declare beyond a reasonable doubt that the error did not contribute to the finding of guilty. (*Chapman v. California, supra.*) In the present case the illegally seized evidence used in conjunction with and in cooperation with the sole witness's testimony so plainly bolstered the evidence for the prosecution that it is impossible to declare beyond a reasonable doubt that its admission did not contribute to the finding of guilty. In my opinion, the rationale of our Supreme Court in the case of *People v. Kalpak*, 1 Ill.2d 411, compels reversal of the case at bar because the facts are so similar. In *Kalpak*, one Johnson, a co-defendant of Kalpak, was convicted of the crime of abortion on the testimony of the prosecutrix alone who identified him as the one who performed the abortion upon her and on the admission into evidence of certain items found on Johnson's premises as a result of an illegal search and seizure. Our Supreme Court said at page 428:

"* * * A defendant, whether guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with our laws. Under our system of jurisprudence, there is not one form of trial for a guilty person, and a different form for an innocent person. (*People v. Galloway*, 7 Ill.2d 527; *People v. Stanko*, 407 Ill. 624.) Therefore, although there was other evidence tending to establish Johnson's guilt, we are compelled to reverse the judgment of the criminal court as to him and remand the cause for a new trial."

Thus we see that the majority opinion in the present case reaches

an entirely different result than that of our Supreme Court on a case involving a similar question of fact and involving the same question of law, *i.e.,* harmless error.

The language of our Supreme Court in *People v. Catavdella,* 31 Ill.2d 382, at 386-387, is also pertinent to this case:

> "The State contends that even if the search of the trunk be held unlawful the conviction can still be sustained on the ground that there was other evidence in the record to establish the guilt of the defendants beyond a reasonable doubt. Specifically, it is contended that the items found in the back seat of the car were admissible as the product of a search incident to a lawful arrest without a warrant and that proof that the defendants were in possession of these articles was sufficient to establish their guilt. In effect, the State asks us to hold that the error in the admission of the items found in the trunk was harmless error. In *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, the Supreme Court held that on the facts of that case the erroneous admission of unlawfully obtained evidence was prejudicial and therefore found it necessary to decide whether the erroneous admission of evidence obtained by an illegal search and seizure could ever be subject to the rule of harmless error. The court stated that the test was not whether there was sufficient other evidence upon which the defendant could have been convicted, but whether there was a reasonable possibility that the evidence complained of might have contributed to the conviction. It seems clear in the present case that the erroneous admission in evidence of the television set, the guns, and the quilt found in the trunk, all of which were identified by the burglary victim as property taken from his home, could have contributed to the finding of guilty."

In *People v. Smith,* 38 Ill.2d 13, our Supreme Court said at page 17:

> "The test of whether error is harmless is not whether there is other evidence of guilt or even whether other proof of guilt is overwhelming. (*Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824, 827, footnote 7.) In spite of the other evidence in the record we are unable to say, beyond a reasonable doubt, as commanded by Chapman that Lemmon's identification of defendant as one of the men who made the sale did not contribute to the finding of guilty. The officers did not see the sale; Lemmon did not testify; and the only direct evidence linking defendant with the sale was the testimony of Sibley. Under these circumstances it is possible that Lemmon's identification might have played a part

in the finding of guilty. Because of this error the judgment must be reversed."

It appears to me that without question the foregoing opinion of our Supreme Court compels a conclusion opposite to that of the majority opinion, as do the opinions of our United States Supreme Court.

In *Bumper v. North Carolina,* 391 U.S. 543, 20 L.Ed.2d 797, 88 S.Ct. 1788, the United States Supreme Court held that the admission into evidence against one charged with rape and felonious assault of a rifle obtained by an unlawful search and seizure in his home was not harmless error even though two of the accused's victims positively identified the accused. The words of Justice Harlan in his concurring opinion are particularly appropriate.

> "Finally, if I were persuaded that the admission of the gun was 'harmless error', I would vote to affirm, and if I were persuaded that it was arguably harmless error, I would vote to remand the case for state consideration of the point. But the question cannot be whether, in the view of this Court, the defendant actually committed the crimes charged, so that the error was 'harmless' in the sense that petitioner got what he deserved. The question is whether the error was such that it cannot be said that petitioner's guilt was adjudicated on the basis of constitutionally admissible evidence, which means, in this case, whether the properly admissible evidence was such that the improper admission of the gun could not have affected the result.
>
> I do not think this can be said here. The critical question was the identity of the perpetrator of these crimes. The State introduced eyewitness identification of petitioner by his two victims, and a gun with which there was evidence these victims were shot, together with testimony that it had been found in petitioner's place of abode. The jury could, of course, have found the testimony of the victims credible beyond a reasonable doubt, and convicted petitioner on this basis alone. But it might well not have. The addition of a tangible cross-check linking petitioner with the crime can hardly be said, from the judicial vantage point, to have been harmless surplusage."

In the present case also, the jury could have found the testimony of the prosecuting witness credible beyond a reasonable doubt and con-convicted him on that basis alone, but then it might not have.

In this day and age many of our citizens believe that a person charged with crime is not entitled to due process of law because it is more important that he receive his punishment than that our citizens be protected

from arbitrary and unlawful acts of the government. This type of thinking in a judicial opinion, disguised under the "harmless error" doctrine, is tantamount to an invitation by the courts for our law enforcement officials to violate the rights of individuals. The courts pay lip service to the Constitution while at the same time condoning its violation. The end result is obvious.

Long before anyone ever heard of the Warren Court and during a time in the history of our country when both liberals and conservatives believed that our State and Federal Constitutions were a bulwark against oppressive action by the State, our Supreme Court in *People v. Castree* (1924), 311 Ill. 392 at 406, had this to say:

> "Our State constitution guarantees to every person charged with crime,—and it makes no distinction between the guilty and the innocent,—the right to a trial by a jury of twelve men, to be confronted by the witnesses against him, face to face, not to be compelled to give evidence against himself, and to be secure in his person, house, papers and effects against unreasonable search and seizure. The framers of the Federal constitution, as originally presented, did not include in it these provisions, but they were added on the demand of the States to which it was submitted for adoption. They were then deemed necessary for the protection of the individual against the oppressive action of the government, not only of the indefinite aggregation of authority which has its seat at the capital, but of every official who administers a part of the functions of government. They were adopted not to enable the guilty to escape the consequences of their crime nor only to be availed of by the innocent, but they were regarded as essential to the protection of every person against whom a charge of crime was made, from the arbitrary, tyrannical and unlawful conduct of the representatives of the government. A consideration of the origin, history and use of writs of assistance in England, of their use in this country, and the evolution of the fourth amendment to the Federal constitution, manifests the importance of this safeguard of the citizen against unreasonable searches and seizures of his person or property, and the necessity that it shall not be frittered away by the courts by a narrow and illiberal construction and a willing blindness and indifference to its violation."

The majority opinion in this case appears to depart from constitutional standards because of the particularly revolting crime involved. It is no more than a human and natural tendency to want to make sure that the perpetrators of such crimes are punished. However, inestimable damage can be wreaked upon our constitutional rights by using one type of stan-

dard for one type of crime and another standard for another type of crime. The risk is far too great to be ignored, and the implication that a sort of omniscience can be applied to certain cases, allowing evidence and/or procedures normally rejected because of appearance of guilt or urgency, or likelihood that the accused will be convicted in any event, is completely out of keeping with our history and theory of justice.

I would remand this case for a new trial.