THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MORRIS ROGERS, Defendant-Appellee.

First District (3rd Division) No. 61080

Opinion filed December 18, 1975.

Bernard Carey, State's Attorney, of Chicago (Michael E. Shabat, Assistant State's Attorney, of counsel), for the People.

William C. Starke, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal by the State, pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1973, ch. 110A, par. 604), from an order suppressing certain evidence seized at the time of arrest. The sole contention raised is that the trial court, while adopting the evidence presented by the State, misconstrued such evidence in finding that the items were not seized in a search incident to an arrest upon probable cause. We affirm. The pertinent facts follow.

Defendant, Morris Rogers, was charged by indictment with attempted murder, aggravated assault, and unlawful use of a weapon. Before trial, he filed a motion in writing to suppress a shotgun, two shotgun shells, and a blanket seized at the time of his arrest. Defendant alleged in the motion that the items were seized without a warrant and without probable cause for arrest. The hearing on the motion was held on May 16, 1974.

Joseph Jones testified for the defense that on October 23, 1971, he resided on the second floor of an apartment building at 1510 East Marquette Road, in Chicago, and that the defendant occupied an apartment on the third floor. He stated that at approximately 11 a.m. on that date, while in his room, he heard a commotion at the front door of the building. When he went to the stairway landing to investigate he observed four police officers kick open the front door. They said they were looking for the defendant and proceeded to search the first and second floor apartments. They then went to the third floor and entered defendant's apartment. Jones stated that he went up there a short time later and

saw the defendant through the open door, standing beside his bed, handcuffed and dressed only in underpants. He saw the officers remove a blanket from under the bed, and there was a shotgun wrapped in the blanket. Defendant was then taken from the building by the police.

Defendant testified that on October 23, 1971, at about 11 a.m., he was asleep when two police officers entered his apartment without his permission and stated they had come to arrest him. They searched his apartment and found a shotgun wrapped in a blanket underneath his bed. He was then handcuffed, arrested and taken to the police station.

Officer Henry Danker testified for the State. He and his partner, Officer Gill, had been assigned to investigate the theft of a diamond ring from Mrs. Saul Blender. Mrs. Blender had told them on October 17, 1971, that she suspected her maid, Theresa Rogers, had taken the ring. Although she was unwilling to sign a complaint at that time, Mrs. Blender provided an address of the agency from which the maid had been hired. Officer Danker later secured the address of Mrs. Palmer whom he believed to be the sister of Theresa Rogers. On October 23, 1971, Danker and Gill went to the Palmer address where they met Wilbur Hillard. He told them that Theresa Rogers was actually a male named Morris Rogers, and told them where he lived. He volunteered to accompany them and identify the defendant. While en route, Hillard told Danker he should have help because he had previously seen defendant in possession of a shotgun, and Danker radioed for assistance. Two uniformed officers, Burge and Campbell, met them at the entrance of defendant's apartment building. After knocking on the door they were admitted by an unidentified man. Inside, Danker asked Hillard if defendant was one of the persons standing in the first floor hallway and Hillard said he was not. They then went up the stairs to a point halfway between the second and third floor, where Danker saw three men standing on the landing of the third floor. Upon seeing the police, one of the men ran down the corridor and was pursued by Officer Gill. Defendant was one of the two remaining on the landing; he was wearing red underpants and had a blanket wrapped tightly around his arms and shoulders. Danker moved toward him and told him to drop the blanket. Instead, defendant moved toward Danker and raised his right arm, and Danker noticed an object under the blanket rise and point toward his stomach. He heard a click which he said sounded like the hammer of a weapon striking the chamber. He grabbed defendant's right arm and threw him against the wall, and the two officers then wrested the object from him. It was a shotgun with two live rounds of ammunition in its chamber. The primary of one shell had been dented, but neither had been discharged. Danker stated

that the defendant was then arrested, handcuffed and advised of his rights. The apartment was searched but no jewelry was found.

Officer John Burge testified. After meeting Danker and Gill at defendant's building they were admitted into the lobby. Burge, armed with a shotgun, followed Danker up to the third floor where they saw defendant on the landing. As Danker approached him, defendant started to raise his right arm, revealing a bulge under the blanket which was around his arms and shoulders. When he raised his arm almost parallel with the floor, defendant leaned forward, causing the object under the blanket to nearly touch Danker's midsection. Burge then heard a loud click, similar to the sound of the hammer on a firearm. Danker called out that defendant had a shotgun under the blanket, and Burge helped Danker disarm the defendant and place him under arrest.

Following arguments of counsel, the trial court summarized the two versions of the incident in testimony of the defense and prosecution witnesses and observed that the testimony was in conflict. The court stated that "[e]ven taking the State's most favorable position," its evidence indicated that the alleged firing of the weapon and its subsequent seizure occurred after the police approached defendant and struggled with him. The court further stated that on the basis of all of the following—consideration of the place and the surrounding circumstances, lack of a warrant or complaint, the failure to identify the presence of a weapon prior to the approach of the police to the defendant on the landing, the arrest of defendant only after discovery of the weapon, and the right of the defendant to be present at the time of the occurrence—the motion to suppress was therefore sustained.

On June 13, 1974, the State moved the trial court to vacate the order of suppression on the ground that the court had misconstrued the testimony of the State's witnesses as to the sequence of events. The court denied the motion to vacate, and the State instituted the instant appeal. The State contends that although the court chose to believe the testimony of the State's witnesses it erroneously misconstrued the factual content of that testimony in granting the motion to suppress. At the hearing, Officers Danker and Burge both testified that the presence of the shotgun was first noticed by them before Danker's physical struggle with the defendant. It is argued that by stating that the two officers had testified to the contrary, the trial court misapprehended their testimony and rendered a finding of fact thereon which was unreasonable and against the manifest weight of the evidence.

Section 114—12(e) of the Code of Criminal Procedure provides, as to motions to suppress evidence illegally seized, that the order or judg-

ment granting or denying the motion shall state the findings of fact and conclusions of law upon which the order of judgment is based. (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(e).) In the instant case, the trial court made specific findings of fact and conclusions of law as to the State's evidence, and while summarizing the evidence presented by the defendant, did not make express findings of fact based thereon.

■■ The State's contention is based upon its assumption that the trial court in fact adopted the version of the instant events as narrated by the State's witnesses. However, the record does not support that assumption. The trial court did not adopt the testimony of the police officers as establishing the facts; instead, it specifically prefaced a summary of the State's evidence with the phrase, "Even taking the State's most favorable position," and nonetheless sustained the motion to suppress. The quoted phrase indicates that the State's version was conditionally and hypothetically considered but not thereby adopted by the court. Furthermore, the ruling which followed clearly indicated that the trial court found the evidence presented on behalf of defendant to be more credible than that presented by the State. Since the testimony of the police officers did not form the basis for the trial court's ruling, the contention of the State that the testimony was misconstrued is without merit.

■■ Here, there was an obvious conflict between the testimony of the defense and State witnesses as to the conduct of the police officers prior to defendant's arrest. That conflict could have been resolved only by a determination of the credibility of the witnesses and the weight to be afforded their testimony. When faced with conflicting testimony of record, a reviewing court is obligated to accept the trial court's resolution of that conflict unless the determination is contrary to the manifest weight of the evidence or clearly unreasonable. (*People v. Donel* (1970), 44 Ill.2d 280, 255 N.E.2d 454; *People v. Haskell* (1968), 41 Ill.2d 25, 241 N.E.2d 430.) The instant record demonstrates that the testimony of Joseph Jones and the defendant was not clearly unreasonable and that the ruling of the trial court was based upon findings of fact which were not contrary to the manifest weight of the evidence.

Accordingly, the order of the circuit court of Cook County sustaining defendant's motion to suppress is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.