[Crim. No. 5529. Third Dist. Oct. 20, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLEY WATSON, Defendant and Appellant.

## COUNSEL

Clarence S. Brown and Michael S. Sands for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, James D. Garbolino and Edsel W. Haws, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Defendant appeals from conviction of violation of section 11530, Health and Safety Code (possession of marijuana), after court trial, jury having been waived.

### QUESTION PRESENTED

Was the search unreasonable?

### RECORD

Defendant was charged in an information with violation of section 11530, Health and Safety Code (possession of marijuana). He waived trial by jury. He moved under section 1538.5 of the Penal Code to suppress evidence. His motion was denied. The parties then stipulated that defendant be tried *by the court* on the basis of the transcript of the proceedings at the preliminary examination augmented by the testimony on the motion to suppress. Defendant was found guilty and sentenced to county jail for a period of 120 days and three years probation.

### EVIDENCE

On March 2, 1969, shortly after midnight, a police radio broadcast in Sacramento reported an armed robbery perpetrated by a male Negro and a female Negro, riding in a yellow 1958 or 1959 Cadillac, bearing a partial license number of OCX. The woman involved was described as wearing a black dress with a v-neck and was approximately 5 feet 3 inches tall.

Approximately 24 hours later, Officer William Johnson of the Sacramento Police Department, who had heard the report, noted a parked light yellow 1959 Cadillac, license number XQC 335, containing three adult male Negroes. In the immediate vicinity was a female Negro, standing on the curb

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

and talking to the driver. The vehicle subsequently pulled away from the curb with the three males inside and went approximately two blocks, at which time it was stopped by Patrol Officer Johnson. Both the officer and the driver, defendant, alighted and defendant was asked to identify himself. The officer informed defendant that he was stopped because of a robbery the preceding night in which a similar vehicle was used.

Apparently Officer Johnson (in the vehicle which made the stop) and defendant and friends stayed at the spot of stop for about three minutes, after which at least three police units arrived. Somewhere in the neighborhood of seven or eight officers were then at the scene.

A request was made of police headquarters for a description of the robbery suspects of the night before and an answer was received. What that description stated is not in the record. Apparently, it added nothing to that given the previous night.

At the suggestion of one of the officers, Officer Johnson proceeded to pat down defendant because a knife was used in the robbery the previous night. Upon discovery of certain drugs defendant was placed under arrest.

The testimony at the preliminary examination concerning the "pat down" follows: "[W]hen I got to the right side [of defendant's three-quarter length leather-type jacket] I felt a pocket and I felt a bulge there, a hard object which I thought was a weapon, and I reached into his pocket and I pulled out a pipe. When I did I pulled out a plastic bag containing seven roll-your-own cigarettes. . . ." The cigarettes were rolled the way marijuana cigarettes are rolled. The officer thought they were marijuana cigarettes. Opening one, he saw a green leafy substance which from his experience he believed to be marijuana. The stem of the pipe was 6 to 8 inches long, not including the bowl.

When the officer felt the bulge in the jacket pocket, he testified, "I squeezed it and I felt the stem. I thought it to be a weapon." He did not have any idea it was a pipe. When he pulled the pipe out of the pocket, it did not come out by itself, the bag came with it. The "bag was on top of the stem. When I grabbed the stem I grabbed the bag." The officer was then asked: "If you had pulled on the stem alone would it have come out alone?" The court sustained an objection on the ground of "speculation on the part of the witness."[1] He was then asked, "Did you know that you had more than that stem in your hand when you pulled it out? He replied, "No, sir, not until it got clear of his pocket." He did not feel the bag "right away." He did not see

---

[1] The answer would have been a statement of fact known to the police officer, not speculation. The error in sustaining this objection, however, was not prejudicial.

the bag when it was part way out of the pocket as it was dark, so he pulled "everything I had ahold of out and looked at it." When he pulled the object out of the pocket, he could not tell what it was. He had to put the pipe in the light to realize it was a pipe. In the light he could see what the bag contained.

At the hearing of the motion to suppress evidence testimony concerning the pat down, although meager, did not vary from that at the preliminary examination.

Two of the officers saw a pill roll down from the hood of the Cadillac. The officers assumed that it dropped out of defendant's hand which had been on the top of the Cadillac. A subsequent search of defendant's pocket turned up 35 pills in a Kleenex. What these pills were does not appear. The officer gave as his reason for the pat down the protection of himself and the officers nearby.

Defendant contends that the pat-down search was not justified and hence the marijuana discovered during it should have been suppressed and not admitted in evidence. As there had been no arrest prior to the search, the question resolves itself into whether the officers were justified in stopping defendant's car and pat-down searching defendant from the meager information they had concerning the previous night's armed robbery.

■ The pat-down search is a constitutionally acceptable procedure frequently used by law enforcement agencies. (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) In *Terry* the Supreme Court held that police may detain a person and subject him to a limited search for weapons even when there are facts short of a probable cause for arrest. These searches must be limited in their scope to the outer clothing of the subject. It is now well settled that the Supreme Court had distinguished between reasonable cause sufficient for a pat-down search and the more rigorous probable cause for an arrest. (*People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658].) The rationale underlying the "stop and frisk" rule is for the protection of police officers during a preliminary investigation which may lead to an arrest. (*Terry* v. *Ohio, supra*.) Under Terry a two-pronged test is used to determine whether the pat-down search and the resulting evidence gained thereby are constitutionally permissible. First, there must exist objective facts (short of probable cause to arrest) which justify the detention initially. Second, the search must be related in scope to the purpose justifying the search—the protection of the officer.

■ The circumstances here justified the officers in the action they took. Defendant's automobile matched the physical description of that used in the armed robbery—either a 1958 or 1959 yellow Cadillac. It was a 1959 yellow Cadillac. The license number, although not the same as the given

"OCX," was the somewhat similar "XQC"; two of the letters were similar in appearance in the license, "Q" being many times mistaken for "O." At least, the similarity was enough to justify investigation. The driver, too, was a Negro as in the description given. He was seen talking to a female Negro. The totality of this did not justify an arrest (and none was made prior to the search) but did justify the stopping of the car and the questioning of its driver. Having in mind that the robber had been armed with a knife, the officer was justified in determining by the pat-down method, in protection of himself and his brother officers, whether defendant was armed. In feeling in defendant's pocket the officer detected a long hard object which could have been a knife, and which the officer thought was a knife. The length of the stem was unusual—6 to 8 inches. He put his hand in defendant's pocket and pulled out together a long stem pipe and a plastic bag containing the marijuana. The search was well within constitutional and judicial boundaries.

■ Where it is found that an object feels reasonably like a knife, gun or club to the searcher, he may properly withdraw the item from the clothing of the suspect. (*People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403].) In *People* v. *Mosher* (1969) 1 Cal.3d 379, at p. 394 [82 Cal.Rptr. 379, 461 P.2d 659], a police officer " 'felt a sharp object like a knife blade' " when he patted down the suspect. The subsequent entry into the suspect's pocket revealed that the object was a wrist watch belonging to the murder victim. The court held the seizure reasonable under the circumstances and noted that the object which prompted an intrusion into the inner clothing must be capable of feeling like an object usable as an instrument of assault. (Cf. *People* v. *Britton,* 264 Cal.App.2d 711 [70 Cal.Rptr. 586]; *Amacher* v. *Superior Court* (1969) 1 Cal.App.3d 150 [81 Cal.Rptr. 558].)

The leather-type material of the jacket would make it difficult to feel the outline of the object and prevent determination that the hard object the officer felt was a pipe. The long, hard pipe was capable of feeling like an object usable as an instrument of assault. The officer was justified in removing it from defendant's pocket to see exactly what it was. The officer thought it was a knife. The pipe and the bag of marijuana came out of the pocket simultaneously. There is no evidence that the officer sought the bag separately.

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1970.