Lester HOSTO et al *v.*
Leonard Edward BRICKELL

78-266                                          577 S.W. 2d 401

Opinion delivered February 26, 1979
(Division II)

*Wright, Lindsey & Jennings,* for appellants.

*Paul D. Groce,* for appellee.

JOHN A. FOGLEMAN, Justice. This is an appeal from the order of the circuit court reversing the suspension by the Arkansas State Board of Pharmacy of the license of Leonard Edward Brickell to practice pharmacy. All charges against appellee Brickell were dismissed. The reversal was based upon a finding that an inspection made by representatives of the State Board of Pharmacy upon the premises of Medix Pharmacy (owned and operated by Brickell) in Jacksonville,

was in excess of the agency's statutory authority. The basis for this holding was that the "inspection" was made without a warrant and without the consent of appellee. Since we do not agree that the appellee's constitutional rights were violated or that the action taken was in excess of the powers of the Board of Pharmacy, we reverse.

We cannot say that the court's finding that Brickell did not consent to the actions taken by the board's representatives was clearly against the preponderance of the evidence. Lester Hosto, Executive Secretary of the Arkansas State Board of Pharmacy, who was accompanied by Hugh Perkins and Woodrow Little, inspectors for the board, and Larry Martin, a drug investigator with the Division of Drug Control with the Arkansas Department of Health, visited the Medix Pharmacy on February 8 and 9, 1978, for the purpose of conducting an accountability audit. Brickell was not present when they arrived. They awaited Brickell's arrival so he could know that the audit was going to be conducted and have the opportunity to be present while it was going on. Brickell said that when Hosto stated the purpose of the visit, he asked if they had a search warrant and received the response that the State Board of Pharmacy did not need a search warrant. Brickell answered that there was not much he could do and went to telephone his lawyer, who was out of his office for an hour or two. After the lawyer was available, Brickell went to talk to him. Brickell said that he did not acquiesce in the "search."

We cannot reverse the trial court's finding on the question of consent unless it is clearly against the preponderance of the evidence. *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139. We cannot say that there is a preponderance of the evidence to show that Brickell's actions were more than an acquiescence to an assertion of lawful authority under the circumstances shown to exist. Such acquiescence does not constitute consent. *Hock* v. *State,* 259 Ark. 67, 531 S.W. 2d 701. See also, *U.S.* v. *Biswell,* 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972); *U.S.* v. *Kramer Groc. Co.,* 418 F. 2d 987 (8 Cir., 1969).

The real issue in this case is the propriety of the actions

of appellants' agents without a warrant. The statute relied upon by appellee is Ark. Stat. Ann. § 82-2626 (Repl. 1976). It deals with administrative inspection warrants. The act does not prohibit inspection of books and records without warrant, pursuant to administrative subpoena, nor does it prevent entries and administrative inspections without a warrant in any situation in which a warrant is not constitutionally required. § 82-2626 (4). The act of which § 82-2626 is a part contains an express disavowal of any legislative intent to limit or restrict the investigatory, *inspection,* or disciplinary powers of any licensing and disciplining board. Ark. Stat. Ann. § 82-2625.1 (Repl. 1976). Consequently, § 86-2626 must be read as an act authorizing administrative inspection warrants and regulating their issuance and execution when constitutionally required, and not as a limitation on actions where a warrant is not required. In other words, a warrant is not required for inspection of premises or books and records unless it is constitutionally required. We must direct our inquiry to the effect of constitutional restraints on the actions of the representatives of the State Board of Pharmacy.

Appellee's petition for review in the circuit court characterized the action of Hosto as an audit, which was not supported by a search warrant. The circuit court's order from which this appeal is taken calls it an inspection. The abstracted record does not elaborate upon the particular action, but it is clear that Hosto and those accompanying him made a rather comprehensive audit of appellee's records pertaining to prescription drugs.

The constitutional prohibitions against searches are contained in Amendment 4 to the Constitution of the United States and in Art. 2, § 15, of the Constitution of Arkansas. Protection is afforded only against *unreasonable* searches. *South Dakota* v. *Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *Wickliffe* v. *State,* 258 Ark. 544, 527 S.W. 2d 640; *Milburn* v. *State,* 260 Ark. 553, 542 S.W. 2d 490; *Young* v. *State,* 254 Ark. 72, 491 S.W. 2d 789; *Thomas* v. *State,* 262 Ark. 83, 553 S.W. 2d 41. See also, *Bedell* v. *State,* 257 Ark. 895, 521 S.W. 2d 200, cert. den., 430 U.S. 931, 97 S. Ct. 1552, 51 L. Ed. 2d 775 (1977); *Wyman* v. *James,* 400 U.S. 309, 91 S. Ct. 381, 27 L. Ed. 2d 408 (1971). This does not mean that a

search without a warrant is necessarily unreasonable and there are many well recognized types of warrantless searches that do not violate these constitutional protections. See *Milburn* v. *State,* supra; *Norris* v. *State,* 259 Ark. 755, 536 S.W. 2d 298; *Wickliffe* v. *State,* supra; *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). The basic and essential purpose of these provisions is to protect the individual against unreasonable governmental intrusions into his privacy, whenever and wherever his expectation of privacy is legitimate. *U.S.* v. *Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *South Dakota* v. *Opperman,* supra; *Camara* v. *Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967); *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); *Jones* v. *U.S.,* 357 U.S. 493, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1958). The reasonableness of a search in any case must be decided upon the basis of the existing facts and circumstances. *Moore* v. *State,* 244 Ark. 1197, 429 S.W. 2d 122, cert. den. 393 U.S. 1063, 89 S. Ct. 714, 21 L. Ed. 2d 705 (1969); *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967); *South Dakota* v. *Opperman,* supra. One of the most important factors to be considered is the existence, extent and legitimacy of the citizen's right to expectation of privacy under the circumstances. *U.S.* v. *Chadwick,* supra; *South Dakota* v. *Opperman,* supra. See *Perez* v. *State,* 260 Ark. 438, 541 S.W. 2d 915; *Gerard* v. *State,* 237 Ark. 287, 372 S.W. 2d 635. See also, *Sanders* v. *State,* 262 Ark. 595, 559 S.W. 2d 704; *Air Pollution Variance Board* v. *Western Alfalfa Corp.,* 416 U.S. 861, 94 S. Ct. 2114, 40 L. Ed. 2d 607 (1974).

Administrative inspections without a warrant were substantially restricted by decisions in *Camara* v. *Municipal Court,* supra, and *See* v. *City of Seattle,* 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967). In *Camara,* the decision was based upon the individual's right to be secure from arbitrary governmental invasion of his right to privacy. In *See,* it was made quite clear that an entry on commercial premises without a warrant cannot be justified purely on the basis of the difference between private residences and such premises, when the entry is upon those portions of the premises which are not open to the public. But it was made equally clear that the holding in that case did not imply that business premises may not reasonably be subject to inspections in many more

situations than private homes would be. In addition, there was a further recognition, though not in specific words, of the greatly diminished expectation of privacy in a place of business where products are marketed under state licensing programs. The public interest requires careful consideration in applying reasonableness standards, according to *Camara.* The importance of surprise as a crucial aspect of routine inspections of business establishments was also recognized in *See,* and the *Camara* court considered the likelihood of frustration of the governmental purpose of the "search" by obtaining a warrant an important factor. *See* did not consider the reach of the Fourth Amendment with reference to statutes regulating a business which is subject to close supervision and regulation in the public interest, and for which a license is required. *U.S. v. Biswell,* 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972).

In a business where there is a legitimate public interest and close regulation, such as the distribution of drugs, a procedure for the issuance of a warrant prior to an administrative inspection is not constitutionally required. See *U.S. v. Biswell,* supra; *State v. Albuquerque Publishing Company,* 91 N.M. 125, 571 P. 2d 117 (1977), cert. den. 435 U.S. 956, 98 S. Ct. 1590, 55 L. Ed. 2d 808 (1978). Where close scrutiny of traffic in commodities which are subject to close governmental supervision is of central importance for a proper governmental purpose and inspection is crucial to the regulatory scheme, if the laws are to be properly enforced and inspection made effective, unannounced inspections without a warrant must be deemed reasonable official conduct. *U.S. v. Biswell,* supra.

An excellent summation of the circumstances under which a warrantless search will meet the test of reasonableness was made by the Supreme Court of New Mexico in *State v. Albuquerque Publishing Co.,* supra. That court said:

> *** In so doing, we hold that a non-consensual, warrantless administrative inspection of business premises can be made only when: (1) the enterprise sought to be inspected is engaged in a business per-

vasively regulated by state or federal government; (2) the inspection will pose only a minimal threat to justifiable expectations of privacy; (3) the warrantless inspection is a crucial part of a regulatory scheme designed to further an urgent government interest; and (4) the inspection is carefully limited as to time, place and scope.

This is not a case in which appellee had a reasonable expectation of privacy insofar as the inspection and audit of his books and records by Hosto and those accompanying him is concerned.

The right of the state in the exercise of its police powers to regulate the practice of pharmacy in the interest of the health and general welfare of the public is beyond doubt. *Harvey* v. *Peters,* 237 Ark. 687, 375 S.W. 2d 654. Thus, the interest of the public is clearly established. The necessity of regulation of drugs was emphasized in that case by quoting the preamble to Act 50 of 1891, the first act regulating the practice of pharmacy. In part, it read:

> WHEREAS, In all civilized countries it has been found necessary to regulate the traffic in medicines and poisons, and to provide by law for the regulation of the delicate and responsible business of compounding and dispensing the powerful agents used in medicines and

*****

We need not trace the history of state regulation of the dispensation and distribution of drugs in order to show the great interest of the public in a very strict supervision of that business. The creation of a board for the supervision and regulation of the business, the requirement of what is in effect a license to engage in the business (under the label of "registration"), after the board's determination of fitness, the requirement that the board keep all registered pharmacists informed of important regulations of other agencies in the field, the vesting of power in the board to revoke or suspend licenses, and the provisions for criminal sanctions for engaging in the business without a proper license or registration are

attestation to the great public interest involved. Ark. Stat. Ann. §§ 72-1002, -1004, -1004.1, -1005, -1007, -1007.1, -1011, -1011.1, -1011.3, -1011.4, -1011.7, -1011.8, -1014, -1015, -1016, -1017, -1018, -1026, -1027, -1028.1, -1028.2, -1031, -1037 (Repl. 1957); -1017.1, -1040, -1044, -1045, -1052 -1053 (Supp. 1977). The extent of state regulation in relation to the handling of narcotic drugs is a further indication that the interests of the public are great and the problem grave. See "Uniform Narcotic Drug Act" [Ark. Stat. Ann. §§ 82-1001 — 82-1023 (Repl. 1976).] Further indication of the public interest in regulation of the business and the gravity of the problem may be found in comparatively recent legislation under the general titles of "Arkansas Drug Abuse Control Act" [Ark. Stat. Ann. §§ 82-2101 — 82-2109 (Repl. 1976)] and "Uniform Controlled Substances Act" [Ark. Stat. Ann. §§ 82-2601 — 82-2638 (Repl. 1976 and Supp. 1977)]. All this legislation shows that an intense regulation of the practice of pharmacy has been undertaken by state government in the public interest. We are certainly in position to take judicial notice that abuse and misuse of drugs are serious problems in our society.

The Board of Pharmacy is charged with responsibility for enforcement of the law governing the practice of pharmacy. Ark. Stat. Ann. § 72-1033 (Repl. 1957). Pharmacists are required to keep records of all narcotic drugs received and dispensed by them and to retain the record of every transaction for a period of two years after the transaction was made. Ark. Stat. Ann. §§ 82-1001 (7), 82-1009 (3) and (5). Every prescription for narcotic drugs must be retained on file by the proprietor of the pharmacy in which it is filled for two years, so as to be readily accessible for inspection by any public officer or employee engaged in the enforcement of the Uniform Narcotic Drug Act. Records required by the act are open for inspection by state officers whose duty it is to enforce the laws of this state relating to narcotic drugs. Only a licensed pharmacist is authorized to sell and dispense narcotic drugs upon a written prescription. Ark. Stat. Ann. §§ 82-1001, -1002, -1006. Hosto, Martin and the inspectors accompanying them were entitled to inspect the records of appellee, which the law required to be kept and held for inspection. The Arkansas State Board of Pharmacy is certainly a licens-

ing and disciplining board under the provisions of Ark. Stat. Ann. § 82-2625. No element of forcible entry is present. Appellee was engaged in marketing products under a state licensing program. The practice of pharmacy, particularly in relation to the dispensation of narcotic drugs and other such commodities is subject to close scrutiny, supervision and regulation for an appropriate governmental purpose. Inspection is clearly crucial to the regulatory scheme. Unannounced inspections without a warrant are crucial to a proper enforcement of the applicable laws through effective inspections. See *U.S.* v. *Biswell,* supra. It is significant that the scope and extent of the inspection are (and were in this case) properly limited. See *U.S.* v. *Montanye,* 493 F. 2d 682 (2 Cir., 1974).

The inspection of records in this case was not such that the prior issuance of a warrant was constitutionally required. *People* v. *White,* 259 Cal. App. 2d Supp. 936, 65 Cal. Rptr. 923 (1968). See also, *Colonnade Catering Corp.* v. *U.S.,* 410 F. 2d 197 (2 Cir., 1969), reversed on ground that there had been a forcible entry, 397 U.S. 72, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970); *U.S.* v. *Montanye,* supra.

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.