Carlton Edward WEBB *v.* STATE of Arkansas

CR 80-48                                    601 S.W. 2d 848
Supreme Court of Arkansas
Opinion delivered June 30, 1980

416

*Thomas M. Carpenter*, of *Lessenberry & Carpenter*, and *Robert W. Laster*, for appellant.

*Steve Clark*, Atty. Gen., by:*Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

JOHN F. STROUD, Justice. Appellant was convicted by a jury of possession of a controlled substance and of being an habitual offender, having two or more prior felony convictions. He appeals from a sentence of five years alleging that the trial court erred in overruling his motion to suppress the controlled substances. We disagree with a portion of the ruling of the trial court and reverse the conviction.

Appellant and four male companions were staying at a Little Rock motel on February 17, 1979, when a mattress in their room caught fire. The motel manager summoned the police at 1:05 a.m. and two units of the Little Rock Police Department responded. The manager accompanied the officers to the room and, after a brief discussion, appellant and

his companions paid the manager for the damage to the mattress. No charges were filed because of the incident, but one of the officers obtained the names of the five persons and made a routine call to the station to see if there were outstanding arrest warrants pending against any of them. The officer was advised that appellant and two others had warrants pending, and they were advised that they would have to come down to the station. Appellant was taken to the parking lot where a "pat-down" search was conducted before he was placed in the back seat of the patrol car. The officer testified that the reason for the search was primarily to protect himself from any weapons, and that in fact he found and seized two knives from appellant. During the "pat-down" search the officer also discovered a bottle containing 10 white pills in a paper sack in appellant's pants' pocket. After noticing that the bottle was labeled "Dialudid," the officer placed the bottle and its contents back in appellant's pants. At the station appellant was booked pursuant to a warrant issued by the Little Rock Traffic Court on September 7, 1979, for contempt of court. During the routine inventory search prior to appellant's being placed in the jail cell, a bag containing 46 red capsules was found in a pocket on appellant's coat sleeve, but he no longer had the bottle of white pills in his pants. The officer searched the police car that carried appellant to the station and found the missing bottle of white pills under the back seat. After the capsules and pills were analyzed, appellant was charged with two counts of possession of a controlled substance, Hydromorphone and Meperidine, and with being an habitual offender.

Appellant filed a motion to suppress the evidence seized from him, contending that the search was unlawful in that it was not made pursuant or incident to a *lawful* arrest. He urged that his arrest was based on an invalid 1976 traffic court warrant of arrest and that, therefore, the search was unlawful. This motion was denied and trial was held before a jury on August 23, 1979, resulting in appellant's conviction of possession of Hydromorphone *or* Meperidine. The jury also found that appellant was an habitual offender under Arkansas law and sentenced him to five years' imprisonment. He

brings this appeal seeking to have the conviction reversed and the charges dismissed.

Appellant offers numerous arguments to support his contention of invalidity of the warrant of arrest issued for contempt of court for failure to attend driver's school. We only need consider some of them to demonstrate that the warrant of arrest was invalid. Appellant correctly contends that the warrant was defective since it was not issued by a judicial officer, but by the clerk of the Little Rock Municipal Court. Ark. Stat. Ann. § 43-406 (Repl. 1977) and Rule 7.1 of the Arkansas Rules of Criminal Procedure control the issuance of arrest warrants, providing, in pertinent part:

Ark. Stat. Ann. § 43-406 —
A warrant of arrest may be issued by the following officers, who are called magistrates in this Code; viz: judges of city or police courts, mayors, and justices of the peace; . . .

Arkansas Rules of Criminal Procedure, Rule 7.1 —
(c) the Clerk of a court or his deputy may, when authorized by the judge of that court, issue an arrest warrant upon the filing of an information or upon affidavit sworn to by the complainant and approved by the prosecuting attorney.

Appellee argues in its brief that the initials "W. B." on the corner of the warrant of arrest should cause this court to take judicial notice that Traffic Judge William Butler must have approved the issuance of the warrant by the clerk. We cannot assume that to be the case, and the State offered no evidence at trial that the judge had authorized the clerk to issue the warrant pursuant to Rule 7.1(c). The warrant of arrest was also defective due to the lack of accompanying affidavit or proof that an information was issued as required by the rule.

Appellant also correctly contends that inasmuch as the arrest warrant was not actually executed for well over two years after its issuance it was "stale." He bases his contention on the fact that the statute of limitations on contempt of

court, a misdemeanor, is one year under Ark. Stat. Ann. § 41-104(2)(c) (Repl. 1977). Pursuant to § 41-104(2), prosecution for the contempt of court offense must have been "commenced" within one year of its commission. Ark. Stat. Ann. § 41-104(6) provides:

> A prosecution is commenced when an arrest warrant or other process is issued based on an indictment, information or other changing instrument, provided that such warrant or process is sought to be *executed without unreasonable delay*. (Emphasis added.)

Appellee argues that even if the arrest warrant was unlawful, nevertheless, the search should be deemed valid as the arresting officer was acting reasonably and in good faith. The trial court agreed with that contention and made a finding that whether the arrest warrant was valid or invalid, the police officer had probable cause to arrest appellant in reliance upon information that an arrest warrant was outstanding. The court further held that the appellant was lawfully searched at the city jail pursuant to that arrest, and that the fruits of that search were admissible in evidence. On appeal we view the totality of the circumstances and make an independent determination; and we are not to reverse the trial court's finding unless it is clearly against the preponderance of the evidence. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1974).

It is not every search and seizure that is forbidden by the Fourth Amendment, but only the unreasonable ones. *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Hosto* v. *Brickell*, 265 Ark. 147, 577 S.W. 2d 401 (1979); *Milburn* v. *State*, 260 Ark. 553, 542 S.W. 2d 490 (1976). The central inquiry is the reasonableness, in all the circumstances, of the particular governmental invasion of a citizen's personal security and that inquiry becomes a dual one — whether the officer's action was justified at the inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry* v. *Ohio*, supra. We are not unmindful that in *Whiteley* v. *Warden*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971) and in *Rodriquez* v. *State*, 262 Ark. 659, 559 S.W. 2d 925

(1978), the products of a search were held to be inadmissible when the search was made in reliance on information furnished by other officers that a valid arrest warrant had been issued, and it turned out that the arrest warrant was not valid. In both of those cases the search was made of an automobile, and we are not willing to extend the holding of those cases to apply to the facts here of a "pat-down" search of an individual made incident to arrest.

Rule 3.4 of the Arkansas Rules of Criminal Procedure allows a search for weapons incident to a detention without arrest if the officer "reasonably suspects that the person is armed;" and Rule 12.1 allows a search "to protect the officer" incidental to an arrest. Justification for a limited search for weapons turns upon the question of whether the facts available to the officer at the moment of search would warrant a man of reasonable caution to believe that the action taken was appropriate. *Pennsylvania* v. *Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). It is only required that the police officer be able to point to specific and articulable facts which, taken together with rational inferences to be drawn from those facts, reasonably warrant a belief that his safety or that of others is in danger. *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975). In striking the balance between the individual's right to be free from arbitrary interference by police officers and the public interest, the element of safety to the police officer is both legitimate and weighty, because it is not reasonable to require that police officers take unnecessary risks in the performance of their duties. *Pennsylvania* v. *Mimms*, supra.

In the circumstances confronting the police officer at the motel, we think any man of reasonable caution would have conducted the "pat-down" search of appellant before placing him in the back seat of the police car. It was not necessary to a reasonable search for weapons for the protection of the officer that he be absolutely certain that the individual searched was armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety was endangered. *Terry* v. *Ohio*, supra. We think the police officer acted reasonably in looking at the article in appellant's pants' pocket felt during the "pat-down"

search for weapons. He also acted reasonably in returning the pill bottle to appellant's pants' pocket after determining that it was not a weapon. The officer testified he found two knives concealed on appellant, and a glass pill bottle is certainly similar enough to the size and shape of a knife to warrant further examination when felt. This is particularly true here when the shape of the bottle was likely somewhat masked by being in a paper sack in appellant's pants' pocket. Other states have allowed the introduction of contraband in evidence that was discovered during a "pat-down" search for weapons. While an officer removed a pipe from the defendant's pocket, a bag of marijuana dropped the ground and it was held admissible. *People* v. *Watson*, 12 Cal. App. 3d 130, 90 Cal. Rpt. 483 (1970). In *People* v. *Holloman*, 263 N.E. 2d 7, 46 Ill. 2d 311 (1970), a hard object, hidden on defendant's back and discovered during a "pat-down," turned out to be a manila envelope containing narcotics; they were held admissible. See also *State* v. *Thomas*, 469 P. 2d 279, 205 Kan. 442 (1970), where marijuana concealed in the defendant's socks was admitted in evidence because weapons are often concealed in a defendant's socks. We, therefore, hold that the trial court properly admitted the Hydromorphone in evidence as the fruit of a reasonable and lawful "pat-down" search. Although not argued by the state on appeal, we point out that the Hydromorphone might also have been admissible as a controlled substance seized without a search due to the apparent abandonment of the pills by appellant when he placed them under the seat of the police car.

However, we think the trial court erred in allowing the Meperidine admitted in evidence. The Meperidine was not discovered during the "pat-down" search for weapons because the pills were not in a bottle or other hard container, but were in a clear plastic bag in the sleeve of appellant's coat. The pills were discovered during the inventory search at the police station just prior to the incarceration of appellant. Although Rule 12.2 allows the thorough search of an accused incident to incarceration, the rule does not authorize such search for incarceration under an invalid arrest warrant.

Although the felony information filed in this case alleged separate counts for possession of the two drugs, the jury

marked through the words typed on the verdict form and changed the words "Hydromorphone and Meperidine" to read "Hydromorphone or Meperidine." Accordingly, the verdict of the jury is reversed and this case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

PURTLE and MAYS, JJ., dissent.

JOHN I. PURTLE, Justice, concurring in part, dissenting in part. I concur in the result of the majority in reversing this case and sending it back for a new trial; however, I dissent from the portion of the opinion tht would allow part of the evidence obtained as a result of the illegal warrant to be used in evidence at the new trial. I cannot understand how the majority can hold that the arrest warrant was invalid yet allow the fruits of the poisonous tree to be used against the appellant.

The majority recognized that *Whiteley* v. *Warden*, 401 U.S. 560 (1971); and *Rodriquez* v. *State*, 262 Ark. 659, 559 S.W. 2d 925 (1978), required the suppression of evidence received as a result of a search based on an illegal warrant. They attempt to distinguish these cases on the ground that the search was of an automobile in those two cases rather than the search of the person. It is my opinion that a person has as much protection under the constitution as his automobile. In fact, part of the evidence in the present case was obtained by the search of an automobile, although the car was not the appellant's.

In *Rodriquez* v. *State*, supra, we held that when an officer relied upon information furnished by another officer to effect an arrest, the officer furnishing the information must have had probable cause to believe that the accused had committed the offense before the fruits of the illegal search could be introduced and the evidence used against the accused. We stated that the state must demonstrate, at a supression hearing, that the sending officer possessed the requisite probable cause to act. In this case it is admitted that the warrant was invalid; therefore, the sending officer had no probable cause and the evidence should have been suppressed. In *Rodriquez* v.

*State*, supra, we quoted from *Whiteley* v. *Warden*, supra, which stated:

> We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

In the case of *Wong Sun* v. *United States*, 371 U.S. 471 (1973), the district court and the court of appeals held the arrest illegal but allowed an oral confession at the time of the arrest, as well as certain drugs surrendered by third parties, to be admitted into evidence. The United States Supreme Court stated there was not probable cause for an arrest warrant, therefore the fruits of the arrest were inadmissible. The Court stated:

> ... It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion ... though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause-evidence which would "warrant a man of reasonable caution in the belief" that a felony has been committed, ... must be measured by the facts of the particular case. The history of the use, ... of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would "leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar* v. *United States*, 338 U.S. 160, 176.

The test in cases such as we have before us is "whether the officer could, on the information which impelled them to act, have procured a warrant for the arrest." Without a doubt, the sending officer had no information of any sort to

indicate the appellant had committed a felony. The only information on file was a stale invalid warrant for a misdemeanor, which was of doubtful origin in the first place. In fact, it was defective on its face.

In *Wong Sun* v. *United States*, supra, the Court stated:

> In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, *Boyd* v. *United States*, 116 U.S. 616, this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. *Weeks* v. *United States*, 232 U.S. 383. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 383. . . .

Arkansas Rules of Criminal Procedure, Rule 12.1, provides for a search of a person and property incident to a lawful arrest; neither this rule nor any other rule authorizes even a "pat-down" search pursuant to an illegal arrest. The search pursuant to a legal arrest is made for the purpose of protecting the officer. I have never heard of anyone being injured by a bag of marijuana, a packet of pills, or any similar item; nor do I think it is reasonable for an officer to fear injury from such items. In fact, it was conclusively proven in this case that the officer had no fear of injury from the container in which the ten pills were found; because, after examining them, the officer replaced them in appellant's pocket. There can be no stronger evidence that there was no fear of danger by the officer.

The only purpose of such a complete and exclusive search, under the guise of a pat-down, is to discover incriminating evidence. Before such items may be used against an accused, the items must be discovered incidental to a legal arrest or the result of a valid search warrant. I am unwilling to be a part of any decision that would legalize procedures expressly prohibited by the constitution nor will I participate in overruling our own decisions through such a disguise.

Therefore, I would hold that all of the evidence received as a result of this illegal warrant be excluded.

I am authorized to state that MAYS, J., joins me in this opinion.