Leroy POAGE and Judy Poage *v.* STATE of Arkansas

CA CR 88-66                                    766 S.W.2d 622

Court of Appeals of Arkansas
Division I
Opinion delivered March 22, 1989

*Paul Johnson* and *Mark F. Cooper*, for appellants.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. This appeal was taken pursuant to Arkansas Rule of Criminal Procedure 24.3(b) which provides:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

On November 19, 1987, the appellants, Leroy and Judy Poage, entered pleas of guilty to manufacturing a controlled substance. Leroy Poage was sentenced to ten (10) years in the Arkansas Department of Correction, with five (5) years suspended, and ordered to pay a fine of $15,000.00 plus court costs. Judy Poage was sentenced to six (6) years in the Arkansas Department of Correction but the sentence was suspended and she was placed on supervised probation; she was also ordered to pay a fine of $8,000.00 plus court costs. On appeal, they argue that the trial court erred in refusing to suppress the evidence discovered at their home as a result of an alleged illegal search.

In March of 1987, four officers of the Baxter County Sheriff's Office and three civilians went to the home of the appellants to levy an execution on their property to satisfy an Oklahoma judgment against them in the amount of $320,511.62 and a Conway County, Arkansas, judgment against them for $78,583.30. At the suppression hearing, there was testimony that the reason so many men were involved was the anticipation that an extensive amount of property would have to be seized to satisfy the large judgments. Specific property listed to be searched for and seized, if found, included a three-office portable building, microwave oven, trash compactor, bathroom fixtures and mirrors, air conditioner compressor, dump truck, Lincoln Continental, assorted trailers, tanks, business band radio equipment,

110

tractors, trucks, truck parts, machinery, 4200 feet of 6-inch water pipe mounted on trailer, assorted nipples, valves, tees and ells, four fifth-wheel plates for trucks, 16 trailer house rims, a set of car ramps, a 3-inch Bowie gear pump and a Cummins turbo for a 290 engine.

Major McPherson, a criminal investigator for the Baxter County Sheriff's Office, testified that upon their arrival at the Poage residence located near Mountain Home, Arkansas, Leroy Poage came outside and Deputy Sheriff Chuck Lovette read the execution documents to him. Poage immediately pointed out one of the dump trucks and the portable building they were looking for, and Judy Poage told one of the men that the Lincoln was behind the house. McPherson, Deputy Sheriff Phil Frame and another man went into the house while others went to the barn. Deputy Frame was searching the master bedroom for small items that would mount quickly in value. Under the bed he found two jewelry boxes, and when he opened them, he discovered marijuana. In the meantime, the men who had gone to search the barn found marijuana growing in a room in the barn. Major McPherson was made aware of these discoveries and he immediately ordered that the search cease. McPherson, with some other men, then went to Mountain Home where they obtained a search warrant from the municipal judge. McPherson, Officer Phil Frame, and a man named James Wylia signed the affidavit for the search warrant.

James Wylia, who was employed by the Arkansas judgment holder and was from Conway County, testified that he was aware that the appellant, Leroy Poage, had previously been suspected of being involved with drugs in Conway and Perry Counties but admitted he did not know whether Poage had been convicted of a drug violation. Wylia also admitted that he had exaggerated Poage's previous drug record in the affidavit for the search warrant. McPherson testified that the men had discussed Poage's Conway County drug activities before proceeding with the execution. However, he was emphatic that the only reason for going to the appellant's house that day was to serve the executions.

The appellants concede that the officers were properly serving a judicial execution when they discovered the contraband.

They contend, however, that the officers had no right to conduct a general, comprehensive search of their house and property in an effort to find items of value. They say there can be no argument that they had an "expectation of privacy" in the boxes under the bed and in a closed room in the barn. *See Katz* v. *United States*, 389 U.S. 347 (1967). The question, as they frame it, is "whether the service of a judicial execution by the Sheriff overcomes the expectation of privacy protected by the Fourth Amendment." Appellants contend it does not, arguing that allowing an execution to provide the basis for a general search "opens the door" for authorities to use executions as excuses for "pretextual" searches which are illegal.

It does not appear that appellant's argument has been considered in Arkansas. However, in *United States* v. *Dadurian*, 450 F.2d 22 (1st Cir. 1971), cert. denied, 405 U.S. 1044, 92 S.Ct. 1329, 31 L.Ed.2d 586 (1972), the argument was rejected. In that case, the court stated that when a law officer "inadvertently discover[s] evidence while acting in his capacity as an officer of the court in a civil action, he cannot be said to have conducted an illegal search and seizure." 450 F.2d 24. This view seems in harmony with that expressed by the Arkansas Supreme Court in *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980):

> It is not every search and seizure that is forbidden by the Fourth Amendment, but only the unreasonable ones. *Terry* v. *Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Hosto* v. *Brickell*, 265 Ark. 147, 577 S.W.2d 401 (1979); *Milburn* v. *State*, 260 Ark. 553, 542 S.W.2d 490 (1976). The central inquiry is the reasonableness, in all the circumstances, of the particular governmental invasion of a citizen's personal security and that inquiry becomes a dual one—whether the officer's action was justified at the inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry* v. *Ohio, supra.*

269 Ark. at 420.

In the instant case, the officers had the legal right to be in the house and the barn searching for anything of value to satisfy the judgment of over $400,000.00. At the first discovery of

contraband, the search was halted and a search warrant was obtained. In determining whether the officers' conduct was reasonable, we view the totality of the circumstances and make an independent determination of the validity of the search and seizure; however, we do not reverse the trial court's finding unless it is clearly against the preponderance of the evidence. *Webb* v. *State, supra.* We find that the trial court did not err in refusing to suppress the evidence seized under the search warrant in this case.

Affirmed.

CRACRAFT and ROGERS, JJ., agree.