Phillip Carl WRIGHT *v.* STATE of Arkansas

CR 89-89                                      778 S.W.2d 944

Supreme Court of Arkansas
Opinion delivered October 30, 1989
[Rehearing denied December 4, 1989.*]

*Purtle, J., would grant rehearing.

*Greene Law Offices*, by: *Omar Greene* and *John Ogles*, for appellant.

*Steve Clark*, Att'y Gen., by: *Kelly Procter*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Phillip Carl Wright appeals from his conviction of possession of cocaine with intent to deliver, resulting in a sentence of life imprisonment. He advances two assignments of error: one, that a motion to suppress evidence should have been granted and, two, testimony of the arresting officers should not have been admitted. We reject the arguments and affirm the judgment.

At about 9:30 p.m. on May 4, 1988, Officer Kelly Martin observed appellant driving east on Interstate 630 in Little Rock at a high rate of speed. The officer turned on his blue lights and appellant pulled over and got out of his vehicle. Moments later another police vehicle driven by Officer Kenneth Temple stopped, responding to Officer Martin's call for assistance. Appellant got back into his vehicle and Officer Martin called to him repeatedly

to get out of his car. After approximately fifteen or twenty seconds appellant emerged but with his back to the officers and with his hands concealed. It appeared to the officers that he was placing something inside the front waistband of his pants as he turned toward them. Officer Martin drew his pistol, ordered appellant to put his hands against the vehicle, and proceeded to search him, removing from his pants a packet enclosed in aluminum foil which proved to be a solid mass of rock cocaine.

Appellant contends the mere fact that a person is validly arrested does not mean that he may be subject to any search which the arresting officer feels is necessary, citing *Tinetti* v. *Whittloe*, 479 F. Supp. 486, *aff'd*, 620 F.2d 160 (7th Cir. 1980). We take no exception to that expression of the law, other than to note the search in *Tinetti* consisted of a custodial strip search of a female traffic violator, where there was no evidence to suggest she was concealing weapons or contraband. We see little comparison between *Tinetti* and the case at bar.

Appellant also submits that the officers used the speeding factor as a pretext for stopping the appellant so that they could conduct a search for contraband, citing *Richardson* v. *State*, 288 Ark. 407, 706 S.W.2d 363 (1986). But here, too, we find material differences in the facts. There were circumstances in *Richardson* which arguably supported the conclusion that the arrest for public intoxication was merely a guise to gain evidence in connection with a homicide of which Richardson was suspected. But here the proof is unchallenged that appellant was driving 75 miles an hour in a 55 mile an hour zone, which provided ample basis for his being stopped. Nor is there any evidence that the police had a dual purpose in mind in stopping appellant. *See Hines* v. *State*, 289 Ark. 50, 709 S.W.2d 65 (1986).

Appellant maintains there were no specific and articulable facts giving Officer Martin cause to fear for his safety, and thus no basis for conducting a protective *Terry* search. Officer Martin could have lawfully arrested the appellant for speeding. Had he done so it would have been proper for him to perform a thorough search incidental to a lawful arrest. Presumably Officer Martin intended only to issue a citation for the traffic offense, but when appellant's behavior raised safety concerns, a protective search was in order. The officer testified that he became fearful for his

safety when the appellant first emerged from his car, reentered the car and then failed to respond to directions to get out. Additionally, when he did get out, appellant kept his hands out of sight as he proceeded to conceal something on his person before turning around.

Officer Martin conducted a pat-down search of the appellant, and only after feeling an unidentifiable *hard* object in the appellant's waistband was there an incursion into the appellant's clothing. The officer removed a ball of aluminum foil and testified that he opened the aluminum ball because there are weapons small enough to be concealed by this object, although he believed that the foil *probably* contained contraband. The basis for the officer's search was one of safety, and not of searching for drugs. In *Johnson* v. *State*, 21 Ark. App. 211, 730 S.W.2d 517 (1987), the police officer received a tip from an informant that Donnell Johnson possessed and was selling drugs. Officer Timmons testified that he proceeded to location and frisked Johnson to check for a weapon *and to see if Johnson had drugs on him.* Here, the officer inadvertently discovered the contraband while conducting a lawful *Terry* search. Just as a full search incident to a lawful arrest requires no added justification, a limited search incident to a lawful stop must at times be performed expeditiously. *Terry* v. *Ohio*, 392 U.S. 1 (1968) (Justice Harlan concurring).

In determining the lawfulness of a search of this kind, two considerations arise: (i) whether the officer is properly in the presence of the party "frisked" so as to be endangered if that person is armed; and (ii) whether the officer has a sufficient degree of suspicion that the party frisked is armed and dangerous. LaFave & Israel, *Criminal Procedure* § 3.8 (1984). In this case, unlike *Terry* v. *Ohio, supra,* there is no question about the propriety of the initial restrictions on the appellant's freedom of movement. The appellant was observed flagrantly violating a traffic ordinance. As for the second consideration, the officer pointed to specific facts available to him at the moment of the search which would warrant a person of reasonable caution to search for weapons.

As to the evidentiary use of the cocaine, we held in *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980), that

evidence discovered as the fruit of a reasonable and lawful pat-down search is properly admissible. Likewise, the Supreme Court has failed to adopt a special exclusionary rule for frisk situations to the effect that only weapons are admissible. LaFave & Israel, *Criminal Procedure* § 3.8 (1984). In fact, that court has expanded the legitimate scope of a *Terry* search to include the interior of an automobile and noted that "if the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan* v. *Long*, 463 U.S. 1032 (1983). The trial court properly admitted the cocaine.

■ The appellant also contends that the police reports of Officers Martin and Temple were diametrically opposite to their trial testimony and thus should not have been accepted by the court. Officer Martin wrote in his report the appellant placed a ball of aluminum foil down the front of his pants, yet at trial Officer Martin testified the appellant placed an unknown object in his pants. When asked about this discrepancy, Martin explained that he wrote the police report after he had searched and arrested the appellant and knew the nature of the object. Similar inconsistencies concerned what the officers included or failed to include in their police reports. But these were not matters of consequence and substantively the reports and the testimony of the officers were consistent. Minor discrepancies, conflicts and inconsistencies are for the jury to assess in weighing the testimony. *Hurvey* v. *State*, 298 Ark. 289, 766 S.W.2d 926 (1989).

AFFIRMED.

PURTLE, J., and GLAZE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. The appellant was stopped for speeding. The officers drew their weapons and ordered him to stand spread-eagled with his hands on the vehicle he had been driving. They then searched him and found a small, soft packet of drugs concealed in the front of his trousers.

The mere fact that the appellant was searched after having been stopped for speeding compels suppression of the evidence. There was no justification for a search under the circumstances. Traffic violations, in themselves, do not give rise to a right for the

police to search every driver stopped. If so, the need for search warrants has been greatly reduced.

One of the reasons offered by the majority in support of the search is that the appellant got out of the car with his hands in front of him and his back to the police. My observation is that most drivers get out of their vehicles with their hands in front of their bodies and their backs toward the rear of their vehicles.

The officer's own statement concerning the actual search in this case is revealing. He said: "What I felt was an unknown object to me. At the time it did not feel like a weapon. Immediately I removed it from his waistband." The officer did not believe that the small, soft object in the front of the appellant's trousers was a weapon and did not fear that he would be injured by it. When the small, soft object appeared to contain drugs, the officer apparently forgot about the traffic ticket idea.

Arkansas Rules of Criminal Procedure, Rule 3.4 reads:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

Not only did the arresting officer not "reasonably" suspect that the appellant was armed and "presently" dangerous—according to his testimony, he did not suspect it at all. Compare the present situation, involving a small, soft object, with the glass pill bottle in *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980), which this court determined to be similar enough in size and shape to a knife to warrant further examination by the arresting officer.

Traffic violations do not necessarily entail the use of weapons or drugs. To allow the police routinely to search for weapons in all such instances would constitute an intolerable and unreasonable intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile. It follows that a warrantless search for weapons in traffic violation cases must be predicated on

specific facts or circumstances giving the officer reasonable grounds to believe that such weapons are present on the person or in the vehicle he has stopped. See *Sibron* v. *New York*, 392 U.S. 40 (1967). See also *People* v. *Superior Court of Yolo County*, 478 P.2d 449 (Calif. 1970), where the California Supreme Court held that, when a police officer observed the passenger in an automobile stopped for speeding bend down and the driver walk toward the patrol car without waiting for the officer to approach, such behavior did not justify a belief that the two were in possession of weapons.

The evidence in this case was obtained on a pretexual basis and was completely unwarranted by law or precedent. I would reverse and remand with instructions to suppress the evidence produced as a result of the illegal search.